**In re Robert L. BROWN, Jr. and Earline Brown, Debtors.**

**Robert L. BROWN, Plaintiff,**

v.

**Thomas A. SHRIVER, Jr., James S. Walsh, Jr. and Taylor F. Seat, Defendants.**

**Bankruptcy No. 383–00272.**
**Adv. No. 383–0392.**

United States Bankruptcy Court, M.D. Tennessee.

May 3, 1984.

Steve Norris, Mayo & Norris, Nashville, Tenn., for debtors.

Jerry Lynn Smith, Asst. Atty. Gen., Nashville, Tenn., for Shriver and Walsh.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

Once again this court must decide whether to enjoin a criminal prosecution of a

debtor.[1] Because our prior cases did not address the effect of the § 524 discharge injunction on post-discharge probation revocation, we will resolve two issues: (1) whether restitution imposed as part of a criminal sentence is a debt subject to discharge in bankruptcy; and (2) if restitution can be discharged, whether the state prosecutor can be enjoined from seeking revocation of a debtor's probation because the debtor discharged a restitution award. For the reasons discussed below, the court holds that an award of restitution is a dischargeable debt in bankruptcy. On these facts, it is appropriate to enjoin the District Attorney from seeking to revoke the debtor's probation and to enjoin the defendant Taylor F. Seat ("Seat") from receiving restitution from the debtor.

The following constitute findings of fact and conclusions of law as required by Rule 7052 of the Bankruptcy Rules.

In early January 1981, the debtor, Robert L. Brown ("Brown"), drove his car into Seat's home causing approximately $1,500 in damage. Brown was criminally charged with driving under the influence. On March 10, 1981, Brown was placed in a pretrial diversion program and required to obtain alcohol treatment, to refrain from committing another alcohol-related offense, and to pay $1,500 restitution to Seat. Brown completed all phases of the diversion program except for paying the restitution. Despite failing to pay Seat, Brown was recommended for probation by Assistant District Attorney James S. Walsh, Jr. ("Walsh"). On February 19, 1982, Brown pleaded guilty to driving under the influence and was sentenced to a $50 fine (suspended), 90 days in jail (suspended), court costs, 11 months, 29 days probation, and

ordered to pay restitution to Seat. Brown paid Seat $400 of the required amount. On October 1, 1982, Brown was notified to appear for a probation revocation hearing on October 15, 1982 because he "failed to make restitution payments in a timely manner to your victim, Taylor F. Seat." The hearing was continued until November 5, 1982, and again until February, 1983.

On January 31, 1983, Brown and his wife filed a joint Chapter 7 petition. Seat was scheduled as an unsecured creditor in the amount of $1,100.[2] The District Attorney's office was notified of the bankruptcy and the probation revocation hearing was continued until June 17, 1983. On June 17, 1983, Brown filed a complaint in this court for contempt against Thomas A. Shriver, Jr., District Attorney General for Davidson County, Tennessee, Walsh, and Seat.[3] Brown requested a permanent injunction precluding all defendants from revoking Brown's probation or taking any other action to collect the discharged debt. The matter is before the court on cross-motions for summary judgment.

## I. RESTITUTION AS A "NONDEBT"

The defendants assert that restitution imposed as part of a criminal sentence or as a condition of probation is not a "debt" and, therefore, is not discharged in bankruptcy.[4] The United States Bankruptcy Court for the Western District of New York has embraced this view:

> [I]t does not appear that restitution could be considered a debt nor that a victim could be considered a creditor. With restitution, the victim has no right to payment. It is the criminal court which sets the restitution amount and if it is not

---

1. *See Whitaker v. Lockert,* 16 B.R. 917 (Bkrtcy. M.D.Tenn.1982); *Holder v. Dotson,* 26 B.R. 789 (Bkrtcy.M.D.Tenn.1982).

2. May 11, 1983 was set as the last day for filing objections to Brown's discharge. No objections were filed and Brown was routinely discharged of all scheduled debts on August 9, 1983.

3. Seat neither answered the complaint nor appeared to defend this matter.

4. 11 U.S.C.A. § 727(b) (West 1979) tells us that a discharge in bankruptcy relieves the debtor of "all *debts*" with certain exceptions enumerated in 11 U.S.C.A. § 523 (West 1979). 11 U.S.C.A. § 727(b) (West 1979) provides in pertinent part:

    Except as provided in section 523 of this title, a discharge under subsection (a) of this section *discharges the debtor from all debts that arose before the date of the order for relief under this chapter.* (emphasis added).

paid the victim cannot proceed against the debtor to enforce payment, but instead the probation officer must report the event of nonpayment to the court which in turn determines if a violation of probation has occurred.

*In re Button,* 8 B.R. 692, 694 (Bkrtcy.W.D. N.Y.1981).

This court cannot accept the narrow conception of "debt" adopted in *Button.* The relationship memorialized by a criminal court award of restitution is not beyond the scope of "debt" for bankruptcy purposes. "Debt" dischargeable in bankruptcy is not restricted to obligations incurred in consumer or business transactions, but includes *all* obligations, however, incurred. 11 U.S.C.A. § 101(11) (West 1979) defines "debt" broadly as a "liability on a claim." "Claim" is broadly defined as any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C.A. § 101(4)(A) (West 1979). The legislative history indicates that "claim" should be interpreted to foster the widest scope of debtor relief:

> The definition is any right to payment ... By this broadest possible definition, and by the use of the term throughout the title 11 ... the bill contemplates *that all legal obligations of the debtor, no matter how remote or contingent,* will be able to be dealt with in the bankruptcy case. It permits the broadest possible relief in the bankruptcy court.

H.R.REP. NO. 595, 95th Cong., 1st Sess. 309 (1977); S.REP. NO. 989, 95th Cong., 2d Sess. 21 (1978), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5808, 6266. (emphasis added).

The "claim" in this case arose when Brown damaged Seat's home. The "debt," or liability on that claim, existed at that time and, like most debts, was entitled to thrive in the bankruptcy context without the intervention of any court. The debt between the debtor and Seat was fully cognizable in bankruptcy and if not within an

exception to discharge, fully dischargeable in bankruptcy before the criminal court became involved. Had Seat gone into a state civil court and reduced his debt to a judgment, in the absence of an exception to discharge or dischargeability, the civil judgment, along with the debt, would have been discharged.

Herein, Seat submitted his damage estimates to the Assistant District Attorney and those estimates were incorporated into a restitution order of a *criminal* court. If the Bankruptcy Code said that only orders to pay money by *civil* courts are debts for bankruptcy purposes, then credence could be given to the defendant's argument that a criminal court restitution order does not embody a "debt" dischargeable in bankruptcy. However, nothing in the Bankruptcy Code suggests that only civil courts enter orders to pay money that are subject to discharge in bankruptcy. A restitution order by a criminal court no less acknowledges the existence of a debt than an order of a civil court reducing that claim to judgment. The fact that a criminal court might participate in enforcement or collection of the debt between victim and debtor/defendant does not make the underlying obligation a "nondebt" for bankruptcy purposes.

To win their argument, the defendants must first characterize the restitution order as being disembodied from the underlying "debt" created by Brown's actions. The defendants must then characterize the restitution order as something other than "debt" for bankruptcy purposes. What then is the restitution order? It acknowledges a "right to payment" yet defendants contend that this particular "right to payment" falls outside the notion of "right to payment" in § 101(4)(A). The restitution order confirms a "liability" of the defendant/debtor yet again, the defendants claim this particular "liability" exists beyond the notion of "liability" in § 101(11). The defendants' argument is nonsense. It requires a level of distortion of language most appropriate for the actions of legislatures and not courts. If the right of payment and the liability in a criminal court

order of restitution were intended to be outside of the realm of debt for bankruptcy purposes, then how simple it would have been for Congress to include appropriate language in the Bankruptcy Code. The existence of a debt must be determined by substance not metaphysics. *See Pauley v. Spong,* 661 F.2d 6, 9 (2d Cir.1981); *Bailey v. Wright,* 584 F.2d 83, 85 (5th Cir.1978); *Williams v. State of Washington,* 529 F.2d 1264, 1270 (9th Cir.1976). A restitution order of a state criminal court—whether it is characterized as embodying the pre-existing debt between the victim and the defendant debtor or if it is characterized as creating a separate obligation—is a "debt" for purposes of the Bankruptcy Code and is dischargeable in bankruptcy if not otherwise excepted from discharge.

Seat did not object to the dischargeability of his claim. The exceptions to discharge are strictly construed in favor of the debtor to foster comprehensive relief and a fresh start for debtors. *See, e.g., Perez v. Campbell,* 402 U.S. 637, 648, 91 S.Ct. 1704, 1710, 29 L.Ed.2d 233 (1971); *Gleason v. Thaw,* 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915); *Murphy & Robinson Investment Co. v. Cross,* 666 F.2d 873, 879 (5th Cir.1982); *Kansas State Bank and Trust Co. v. Vickers,* 577 F.2d 683, 687 (10th Cir.1978); *Houtman v. Mann,* 568 F.2d 651, 653 (9th Cir.1978); *Household Finance Co. v. Danns,* 558 F.2d 114, 116 (2d Cir.1977). This court is forbidden to speculate whether the debt resulted from willful and malicious conduct by the debtor within the meaning of 11 U.S.C.A. § 523(a)(6) (West 1979).[5] The defendants' efforts to bypass the normal routes by which claimants defeat a bankruptcy discharge must be rejected.

Strong policies urge rejection of defendants' invitation to create a new exception to discharge for restitution orders. Creditors use (and abuse) state criminal process as a technique for the collection of debt. This fact has been judicially determined by this and other courts. *See, e.g., Whitaker v. Lockert,* 16 B.R. 917, 922 (Bkrtcy.M.D. Tenn.1982); *Taylor v. Widdowson,* 16 B.R. 323, 327 (Bkrtcy.D.Md.1981); *American Express Co. v. Griffin,* 13 B.R. 591, 592 (Bkrtcy.S.D.Ohio 1981). To countenance a judicially-created exception to discharge for restitution orders would be to sanction misuse of the criminal justice system and circumvention of the bankruptcy laws. The *Button* approach permits a claimant to elevate the quality of its debt by utilizing the criminal courts, while the creditor using appropriate civil remedies runs squarely into the § 727 discharge. This outcome should not be condoned or encouraged by manufacturing an exclusion from the concept of "debt."

On the facts of this case, we must reject the defendants' argument that restitution is part of the State's punishment process and therefore not dischargeable. Some courts have refused to discharge restitution or to issue injunctions against the enforcement of restitution judgments where restitution is found to be "rehabilitative" in nature. These decisions reason that if restitution is punitive and not "compensatory," it is a form of rehabilitation not affected by the bankruptcy discharge. Application of this theory requires examination of the intent and effect of a restitution award. Presumably, restitution intended only as compensation for the victim would generally be dischargeable in bankruptcy. Awards dramatically larger or smaller than the victim's damages might escape discharge. Some would find this an incongruous result—restitution is intended at least in part to make the victim whole, but it must do more or do less than compensate a victim for loss to avoid discharge in bankruptcy. It is not altogether clear how the intent of the state criminal court or the amount of the restitution award can cause redefinition within the notion of debt for bankruptcy purposes. There is certainly

---

**5.** 11 U.S.C.A. § 523(a)(6) (West 1979) provides:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

nothing in § 101(11) or § 101(4)(A) to suggest that the definition of debt or claim hinges upon the "intent" of those adjudicating the obligation, or upon the amount of the liability. However, several courts have found some logic to this approach. The United States Bankruptcy Court for the District of Arizona refused to enjoin or discharge restitution in a case in which the amount of restitution ordered by the state court was evidence of punishment rather than payment of debt:

> The nominal amount of total restitution under the circumstances fixed by the state court ... is not the amount of damages sustained by the claimants injured, nor is such an amount due and owing directly to them .... This court therefore finds and determines that the underlying purpose of probationary criminal restitution *under the facts of the case is not one of simple debt servicing for victims but is in fact rehabilitative in nature.*

*State of Arizona v. Magnifico,* 21 B.R. 800, 803 (Bkrtcy.D.Ariz.1982) (emphasis added). The court commented that if restitution was being used as a subterfuge to collect a private debt, action to stay the effect of the restitution order would be justified:

> Those courts, though each noting the reluctance of the Bankruptcy Court to interfere in any way with the enforcement of criminal law, looked to the motivation involved in the criminal charges when litigated to collect the debt. *The decisions reflect that the true purpose for the restitution in each case was to make the victim whole* after discharge of an underlying, pre-existing debt; *therefore, the criminal proceedings in-*

*volving restitution therein was properly stayed* by the Bankruptcy Code under such limited circumstances explained therein.

*State of Arizona v. Magnifico,* 21 B.R. at 803 (emphasis added). The United States Court of Appeals for the Fifth Circuit has also suggested a limitation on its prohibition of judicial interference to cases involving purely "rehabilitative" restitution:

> Carson argues that to require restitution is unfair in light of FNB's failure to assert its rights in the bankruptcy proceeding. *If the principal aim of the probation condition were to make the bank whole, this argument might have some appeal.*

*United States v. Carson,* 669 F.2d 216, 217 (5th Cir.1982) (emphasis added). This distinction—compensation vs. punishment—finds some support in 11 U.S.C.A. § 523(a)(7) (West 1979) which excepts from discharge fines and penalties to government entities only if punitive in nature—even fines and penalties payable to the government are discharged in bankruptcy if found to be compensatory.[6] However, nothing in § 523 suggests a similar exception for restitution awards not payable to a government.

Even if we accept the argument that only "compensatory" awards of restitution are dischargeable in bankruptcy, the proof clearly establishes that no motive of punishment or rehabilitation supports this order of restitution. Although Assistant District Attorney Walsh submitted an affidavit denying that revocation of Brown's probation was designed to coerce payment of Seat's damages,[7] the affidavit is completely

---

6. 11 U.S.C.A. § 523(a)(7) (West 1979) provides:
    (a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
        \*     \*     \*     \*     \*     \*
    (7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, *and is not compensation for actual pecuniary loss* other than a tax penalty. (emphasis added).
Thus Congress created a special category of nondischargeable debts for punitive obligations owed to governmental entities but allowed the discharge of fines, etc. which are compensatory in nature.

7. Walsh asserted in an affidavit filed July 27, 1983 that:
    The decision to revoke Mr. Brown's probation and the proceedings to do so were not motivated by the desire to collect a private civil debt for any individual, but was rather an attempt to enforce the criminal laws of the State by revoking the privilege of probation

contradicted by Walsh's deposition. The deposition indicates that the District Attorney's motive in requiring restitution and in seeking to revoke Brown's probation was to coerce monetary compensation for Seat:

Question: So you were only compensating victims for almost an economic loss to their automobile or property?

Answer: That's about it. I couldn't possibly try to evaluate physical damage. Sometimes maybe somebody would settle for a hospital bill. That would be done. At those points, I would suggest that they needed an attorney.

\* \* \* \* \* \*

Question: [I]f restitution were in fact made by a third party, i.e., his insurance company or by friends or relatives or anyone else, *in other words if the victim were made whole*, then that individual would have successfully completed diversion and would be allowed to plead to guilty to wreckless (sic) driving?

Answer: Yes.

(Deposition, p. 30–31) (emphasis added). The amount of restitution was calculated from damage estimates provided by Seat.

Question: But in making these decisions as to whether or not restitution was completed, the defendant's conduct had very little to do with it, did it not? It was basically just how much damage the victim had sustained.

Answer: I would have to say that that in essence would have to be true.

(Deposition, p. 31). The only reason that Brown's probation is being revoked is that he failed to pay restitution. Brown successfully completed all other aspects of the diversion program:

Question: If he had completed the diversion program, you would not have continued the prosecution for DUI?

Answer: Well, if he had made his restitution under his situation with diversion,

we certainly would not have prosecuted him for DUI. The problem was he didn't make the restitution, so he fell back to the second line of defense. Which is, if you don't make restitution, you're going to have to do the time. *Which was our second hope that we would motivate him to pay this victim damages for his injury.* That failed, so now I guess we're back to the third trench.

(Deposition, p. 48) (emphasis added).[8]

Other facts belie Walsh's assertion that punishment and rehabilitation are the motives for the probation revocation. First, Walsh was prompted to seek probation revocation by telephone calls from Seat on April 28, 1982 and October 14, 1982. (Deposition, p. 38). The scheduled hearings were delayed from October, 1982 through June, 1983 because Walsh hoped that Brown would make the payments:

Question: On 11–5–82, what was the purpose of that appearance in court? Was he being revoked on the probation?

Answer: *I think it simply was a situation to have this man finally make restitution.* We were setting these cases to let Mr. Brown come in and also I believe we had the victim to come in. The victim would tell us he has or hasn't made restitution. *Mr. Brown would say, "Please give me some more time" and I would give him some more time. Then three or four months later the victim would call me again and say he has done nothing.* Then we would set the case again, and each time this process would go on.

(Deposition, p. 41) (emphasis added). Walsh admits that relatives, friends, or even insurance companies could pay the restitution and thereby satisfy the conditions of probation:

Question: Let's assume that the individual would show you proof of insurance and that at the point in time when the

---

when Mr. Brown demonstrated that he would not comply with the conditions thereof.

**8.** Illustrative of the lengths to which this collection effort would be taken are Walsh's remarks concerning notations in Brown's file.

I have a notation of 6–17–83. "Defendant has paid about $400. *Can't get blood out of a turnip."* 7–21–83, "Talked to victim. *Told him that state would."*

(Deposition, p. 38) (emphasis added).

accident occurred that individual was insured. Would you go any further and ask for any other requirements to be imposed on that individual before they could enter the diversion program?

Answer: Well, generally in that particular situation, I would recommend diversion plus restitution.... Restitution was always required when there was injury. *Whether or not they were covered by insurance was come see, come saw to me.* Restitution would be part of the requirement to go into diversion. That was satisfied if they simply handed me a paper and I put it in there, but I would also say diversion plus restitution, which was kind of a key to indicate that it had been paid or would be paid.

Question: You were satisfied in those cases where the individual demonstrated proof of insurance at the time of the loss. You were satisfied in those cases that restitution would be made.

Answer: Yes.

(Deposition, p. 25–26) (emphasis added). The District Attorney's office is not seeking to vindicate the rights of the citizens of the State of Tennessee, it is just trying to force Brown to pay Seat. The restitution award is a debt discharged in this bankruptcy case.

## II. INJUNCTIVE RELIEF

■ For almost as long as federal courts have exercised jurisdiction, there have been statutory limitations on injunctions of state court proceedings. The first Anti-Injunction Act was adopted in 1793 and provided that "nor shall a writ of injunction be granted to stay proceedings in any court of a state."[9] However, as early as 1874, Congress recognized the need to specifically authorize federal courts to enjoin state proceedings to protect the rights of debtors in bankruptcy cases. Section 720 of the Revised Statutes made this unique reference to the bankruptcy laws:

> The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a State, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy.

The modern Anti-Injunction Act was enacted in 1948 and is codified as 28 U.S.C.A. § 2283 (West 1965):

> A court of the United States may not grant an injunction to stay proceedings in a state court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction or to protect or effectuate its judgments.

Though the specific reference to bankruptcy has been removed from the anti-injunction statute,[10] it is well recognized that the "expressly authorized" exception in § 2283 includes injunctions authorized under the bankruptcy laws. *Davis v. Sheldon,* 691 F.2d 176, 179 (3rd Cir.1982). *See Diners Club, Inc. v. Bumb,* 421 F.2d 396, 398 (9th Cir.1970); *Carolina Pipeline Co. v. York County Natural Gas Authority,* 388 F.2d 297, 298 (4th Cir.) *cert. denied,* 393 U.S. 824, 89 S.Ct. 83, 21 L.Ed.2d 95 (1967); *In re Coger,* 319 F.Supp. 859, 861 (W.D.Va.1970). There is no dispute, however, that strong policy considerations militate against routine bankruptcy court interference with state judicial officers conducting criminal proceedings.[11] *See Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

> When a federal court is asked to interfere with a pending state prosecution, established doctrines of equity and comity are reinforced by the demands of federalism, which require that federal rights be protected in a manner that does not

---

9. Act of March 2, 1793, c. 22, § 5, 1 Stat. 335.

10. The Reviser's Note to § 2283 indicates that: An exception as to Acts of Congress relating to bankruptcy was omitted and the general exception substituted to cover all exceptions.

11. Although under 28 U.S.C.A. § 1481 (1982 Supp.) the bankruptcy court is precluded from enjoining another court, the bankruptcy court may enjoin specific judicial officers from conducting the proscribed activity. *See, e.g., Wise v. Ritter,* 25 B.R. 440, 442 (Bkrtcy.E.D.Va.1982); *Whitaker v. Lockert,* 16 B.R. at 920 n. 3; *Barth v. Broshot,* 4 B.R. 141, 143–144 (Bkrtcy.W.D.Mo. 1980).

unduly interfere with legitimate functioning of the judicial systems of the States.

*Kugler v. Helfant,* 421 U.S. 117, 123, 95 S.Ct. 1524, 1530, 44 L.Ed.2d 15 (1975).

The Bankruptcy Code strikes a balance between deference to state criminal proceedings and protection for debtors' rights to discharge and a fresh start. Upon the filing of a bankruptcy petition, the debtor is enveloped by the protection of the automatic stay. 11 U.S.C.A. § 362 (West 1979). However, that miraculous omnipresence does *not* stay *criminal* proceedings brought against the debtor.[12] 11 U.S.C.A. § 362 (West 1979) provides in relevant part:

(b) the filing of a petition ... does not operate as a stay—

(1) Under subsection (a) of this section, of the commencement or continuation of a criminal action or proceeding against the debtor.

After filing of the petition, but before the entry of a discharge, claimants can seek to bar the debtor's discharge or to defeat the dischargeability of a particular debt under the provisions of §§ 727 and 523. If the debtor has committed criminal acts, those acts may bar the discharge or dictate the nondischargeability of a debt by the virtue of several different subsections of §§ 727 or 523. *See, e.g., Smith v. Pitner,* 696 F.2d 447 (6th Cir.1982) (criminal action for murder and subsequent guilty plea of voluntary manslaughter) [§ 523(a)(6) precludes discharge of debt for willful and malicious injuries]; *United States v. Carson,* 669 F.2d 216 (5th Cir.1982) (false financial statement) [§ 523(a)(2)(B) bars dischargeability for obtaining money or property through use of false financial statement]; *Wilson v. Estes,* 30 B.R. 91 (Bkrtcy.E.D. Tenn.1983) (misapplication of contract payments) [§ 523(a)(4) excepts from discharge debts created by defalcation in a fiduciary capacity or through embezzlement]; *Delay v. Underwood,* 25 B.R. 898 (Bkrtcy.W.D. Mo.1982) (conversion) [§ 523(a)(6) prevents discharge of debt for willful and malicious injury to creditor's property]; *Kaping v. State of Oregon,* 13 B.R. 621 (Bkrtcy.D.Or.

---

**12.** On its face § 362(b)(1) appears to allow even a criminal proceeding seeking only the recovery or collection of a debt to proceed prior to entry of discharge and application of the § 524 injunction. Some courts have cushioned the harshness of this interpretation by applying 11 U.S.C.A. § 105(a) to permit pre-discharge injunctions of state criminal proceedings. These courts have overcome in various ways the argument that the general provisions of § 105(a) should not be employed to undo the specific language of § 362(b)(1). Courts invoking § 105 to enjoin criminal proceedings before the entry of discharge cannot be favoring the policy of debtor protection embodied in the concept of the stay because § 362 by its own terms does not provide such protection. Similarly, can it be gainsaid that a § 105(a) injunction protects the debtor's discharge when used to enjoin a criminal action before the debtor is otherwise entitled to a discharge?

When requests for injunctive relief are filed prior to the discharge of the debt involved in a criminal prosecution, the bankruptcy court must be especially cognizant of the principles of comity and equity and seek to avoid premature interference with the state criminal process. Before the discharge injunction of § 524 is in effect only in the most egregious circumstances should a bankruptcy court exercise its equitable power to intervene.

Two disparate views have evolved in applying § 105(a) to predischarge injunction requests. One set of courts has examined the "principal motivation" underlying the criminal proceeding. Under that test, a § 105(a) injunction is proper "[w]hen it is clear that the principal motivation [in prosecuting the debtor] is neither punishment nor a sense of duty, but rather to obtain payment of a discharged debt either by an order of restitution or by compromise of the criminal charge upon payment of the civil obligation." *Taylor v. Widdowson,* 16 B.R. 323, 325–326 (Bkrtcy.D.Md.1981). *See also In re Penny,* 414 F.Supp. 1113, 1114–1115 (W.D.N.C.1976); *Holder v. Dotson,* 26 B.R. at 791; *Wise v. Ritter,* 25 B.R. at 442; *Strassman v. Du-Art Foods, Inc.,* 18 B.R. 346, 347 (Bkrtcy.E.D.Pa.1982); *In re Lake,* 11 B.R. 202, 204 (Bkrtcy.S.D.Ohio 1981); *In re James,* 10 B.R. 2, 3–4 (Bkrtcy.W.D.N.C.1980). A second group of courts has examined the motive of the prosecutor and has granted an injunction only when "bad faith" on the part of the state prosecuting official expressly appears in the record. *See, e.g., Davis v. Sheldon,* 691 F.2d at 178–179; *Lare v. Norton,* 24 B.R. 959, 961 (D.Md.1982); *Tenpins Bowling, Ltd. v. Alderman,* 32 B.R. 474, 480–481 (Bkrtcy.M.D.Ga. 1983); *Wilson v. Estes,* 30 B.R. 91, 96 (Bkrtcy.E. D.Tenn.1983); *Richardello v. Garrick,* 28 B.R. 344, 347 (Bkrtcy.D.Mass.1983); *Trail West, Inc. v. State of South Dakota,* 17 B.R. 330, 331 (Bkrtcy.D.S.D.1982).

1981) (criminal nonsupport of spouse and child) [§ 523(a)(5) prevents discharge of debtor for maintenance and support of spouse and child]; *Reid v. Young,* 9 B.R. 830 (Bkrtcy.M.D.Ala.1981) (larceny of topsoil) [§ 523(a)(4) bars discharge for acts of larceny].

In the absence of a successful action under §§ 727 or 523, bankruptcy courts have the power and the responsibility to protect discharged debtors from *any* effort to collect a discharged debt even if the underlying obligation arises from criminal conduct.[13] 11 U.S.C.A. § 524(a)(2) (West 1979) expressly provides that:

(a) A discharge in a case under this title—

\* \* \* \* \* \*

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, *or any act, to collect, recover or offset any such debt* as a personal liability of the debtor, or from property of the debtor, whether or not discharge of such debt is waived. (emphasis added).

Section 524(a)(2) enjoins the commencement or continuation of *any* action to collect or recover the discharged debt, releases the debtor from any legal duty to repay the obligation and renders the debt uncollectible by *any* legal process.[14] *See, e.g., Campbell v. General Finance Corp.,* 523 F.Supp. 989, 992 (W.D.Va.1981); *In re Dickinson,* 24 B.R. 547, 550 (Bkrtcy.S.D.Cal. 1982) (discharge operates as permanent injunction against collection of debt and any post-discharge attempt to collect debt is basis for contempt).

The entry of a discharge in bankruptcy has a broader effect than § 362 on criminal proceedings which involve the collection or recovery of debt. The discharge injunction replaces the protection afforded a debtor by the automatic stay.[15] Unlike

---

**13.** The United States Court of Appeals for the Tenth Circuit has noted that:

[T]he power and authority of the bankruptcy court to protect the bankrupt and to secure to him the full benefits of his discharge do not terminate with the entry of the decree of discharge. This solicitude rests upon the basic design of the Bankruptcy Act ... to afford the debtor a fresh start in life free from debts except those which by statute survive the discharge.... The Congress and the courts have always recognized the power and the duty of the bankruptcy court to grant any appropriate and necessary injunctive decree in furtherance or in aid of its jurisdiction or to protect or effectuate its judgments.... [T]he remedy afforded to the bankrupt by federal law is not merely a legal remedy in the form of burdensome litigation with successive appeals to reach a court of record. It is a remedy adequate to meet the full requirements of justice—a remedy which comports with the spirit and the purpose of the bankruptcy act to secure to the bankrupt the full and complete benefits and advantages of his discharge.... It is these practical considerations which prompt bankruptcy courts to exercise their equitable protective powers. Indeed, it is these considerations which impose upon them the inescapable duty to vouchsafe the integrity of their decrees.

*State Finance Co. v. Morrow,* 216 F.2d 676, 679–680 (10th Cir.1954).

**14.** The legislative history concerning § 524(a) emphasizes Congressional disclaim for post-discharge collection efforts:

The change is consonant with the new policy forbidding binding reaffirmation agreements under proposed 11 U.S.C. § 524(d), and *is intended to insure that once a debt is discharged, debtor will not be pressured in any way to repay it.* In effect, the discharge extinguishes the debt, and creditors may not attempt to avoid that.

H.R.REP. NO. 595, 95th Cong., 1st Sess. 366 (1977); S.REP. NO. 989, 95th Cong., 1st Sess. 80 (1978) U.S.Code Cong. & Admin.News 1978, pp. 5866, 6321–6322 (emphasis added). Most of the injunction cases cited above are pre-discharge and involve considerations of only §§ 362 and 105(a). *See* note 12 *supra.* The courts that have addressed post-discharge injunctive relief from criminal proceedings generally do not discuss the scope of the discharge injunction provided in § 524. *Whitaker v. Lockert,* 16 B.R. at 923 n. 8; *Kaping v. State of Oregon,* 13 B.R. at 623 (§ 105 *and* § 524 allow post-discharge injunction if principal motivation of prosecution is debt collection); *Davis v. Sheldon,* 691 F.2d at 179 n. 8 ("[t]he Davises do not claim they are entitled to an injunction under 11 U.S.C. § 524(a)(2) and, therefore, we make no determination of the applicability or scope of that section").

**15.** 11 U.S.C.A. § 362(c)(2)(C) (West 1979) provides that certain aspects of the stay expire upon the granting of the debtor's discharge. *See also Noble v. Yingling,* 29 B.R. 998, 1002 (D.Del. 1983); *Home Indemnity Co. v. Sims,* 31 B.R. 473, 474 (Bkrtcy.W.D.Ky.1983); *Skowhegan Savings*

the stay of § 362, there is no exception to the § 524 discharge injunction for criminal proceedings against the debtor. A criminal proceeding continued or initiated to recover or collect a discharged debt is enjoined by the § 524 discharge injunction and falls outside of the protection otherwise afforded by the Anti-Injunction Act. Considerations of comity and equity are overcome by the stated Congressional preference to protect discharged debtors in bankruptcy:

A Bankruptcy Court must exercise its jurisdiction to determine whether a given criminal proceeding has been instituted as a method for the collection of a civil debt dischargeable under the Code. Were bankruptcy courts to permit prosecutions which have as their ultimate purpose the collection of debts to proceed in state criminal courts unimpeded and unsupervised, an intolerable distortion of the elaborate machinery of the bankruptcy laws devised to fix the rights of creditors against the Debtor and the Debtor's property would be created. In such instances, comity dictates that federal, rather than state, interests prevail.

*Taylor v. Widdowson,* 16 B.R. at 326.

If Congress had intended to limit the scope of the discharge injunction, it would have done so by appending limiting language or specific exceptions to § 524 as it did in § 362(b)(1). When examining a post-discharge request for injunction of criminal proceedings, if the criminal action is within the scope of § 524, the bankruptcy court can issue injunctive relief:[16]

*Bank v. Thomas,* 27 B.R. 59, 60 (Bkrtcy.D.Me. 1983); *Berry v. Dial Consumer Discount Co.,* 11 B.R. 886, 891 (Bkrtcy.W.D.Pa.1981). Logically, the delineated exceptions to § 362(a) also cease to operate.

16. The defendants argue that this holding will turn bankruptcy into a "haven for criminals" in contravention of the spirit of the Bankruptcy Code. The defendants note that:

The bankruptcy laws are not a haven for criminal offenders, but are designed to give relief from financial over-extension. Thus, criminal actions and proceedings may proceed in spite of bankruptcy.

H.R.REP. NO. 595, 95th Cong., 1st Sess. (1977); S.REP. NO. 989, 95th Cong., 2d Sess. (1978).

Once a federal bankruptcy court has determined a debt is discharged, the Bankruptcy Code prohibits actions to collect on that debt. 11 U.S.C. § 524(a)(2) ... If a bankruptcy court discharges a debt, the Bankruptcy Code prohibits any act to collect ... any such debt, 11 U.S.C. § 524(a)(2), and thus the civil remedy of restitution, even if arising out of a criminal proceeding, is prohibited. The creditor cannot request restitution or direct the county attorney to request it, and the county attorney cannot recommend it. The federal Bankruptcy Code, by virtue of the Constitution's Supremacy Clause, forbids it, and this Court can and will enjoin any such requests or recommendations ... Any order to make restitution of a discharged debt would thus directly conflict and obstruct the purposes of the federal bankruptcy law, and would be void under the Supremacy Clause and the holding of *Perez v. Campbell, supra,* both of which bind all courts of this court.

*Barnett v. K-Mart,* 15 B.R. 504, 510 (Bkrtcy.D.Kan.1981).

The evidence demonstrates that the revocation of Brown's probation is an action to collect Seat's claim for damages and should be enjoined. The original sentence given Brown by the state court contained elements of punishment and elements of pure debt collection. All that remains of the state criminal proceedings is the payment of damages to Seat.[17] Seat solicited the

The State, of course, has a legitimate interest to protect its citizenry from criminal acts. However, a creditor cannot use the criminal process to collect an otherwise dischargeable debt by cloaking it as restitution. This court does not question the legitimacy of any other weapons in the State's punishment arsenal, including fines, imprisonment, or restrictive probation. If imprisonment or a nondischargeable fine were involved, this court would not intervene.

17. From the stipulated facts it appears that Brown completed an alcohol treatment program, avoided the commission of other alcohol related offenses, etc.

District Attorney's office to exert pressure for the payment of the restitution. The probation revocation proceedings were delayed for the purpose of allowing Brown to pay restitution. The threat of probation revocation is an action designed to force Brown to pay the discharged debt and is prohibited by the § 524 injunction.[18]

Accordingly, the District Attorney for Nashville, Davidson County, Tennessee will be enjoined from seeking to revoke Brown's probation for failure to make the restitution discharged in bankruptcy. Seat will be enjoined from receiving restitution from Brown.[19]

An appropriate order will be entered.

---

**18.** The defendants also argue that Brown should raise his discharge as a defense at the probation revocation hearing rather than requesting this court to enforce the § 524 injunction. A similar "exhaustion of remedies" requirement has been imposed by several courts. *See, e.g., Davis v. Sheldon,* 691 F.2d at 178; *Barnette v. Evans,* 673 F.2d 1250, 1252 (11th Cir.1982); *Porter v. Gaston,* 462 F.Supp. 370, 372–373 (E.D.Ark.1978); *Wagner v. Miller,* 18 B.R. 339, 341 (Bkrtcy.W.D. Mo.1982). This court has previously held, however, that when a creditor violates the discharge injunction:

> This court finds no reason to impose such a stringent requirement on the debtor ... Congress' enactment of the Bankruptcy Code granted debtors certain rights and protections which this court is obligated to enforce ... This court should provide a ready forum to remedy any interference with the debtor's rights under the federal bankruptcy laws.

*Holder v. Dotson,* 26 B.R. at 792 n. 4. The United States Supreme Court noted unanimously in *Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934) that a federal bankruptcy court may use its injunctive powers to save the bankrupt the inconvenience of pleading and proving the bankruptcy discharge in a subsequent state action.

**19.** Because the court grants the requested relief, the court does not address the constitutional issues lurking within this proceeding. Judge Paine of this court has previously noted that the utilization of the criminal process to coerce the repayment of discharged debts may be violative of the Tennessee Constitution, Article I, Section 18 which prohibits imprisonment for civil debt. *Holder v. Dotson,* 26 Bankr. at 792; *Whitaker v. Lockert,* 16 B.R. at 922 n. 7. The United States Supreme Court has also recently noted in *Bearden v. Georgia,* 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983) that both due process and equal protection are violated by the automatic revocation of probation where the defendant is unable to pay a fine or restitution award. Finally, the imposition of a restitution award on a discharged debtor may cause a conflict with the Supremacy Clause. *See, e.g., Davis v. Sheldon,* 691 F.2d at 178.