In re Charles C. HEINCY and Sharon L. Heincy, Debtors.

Charles C. HEINCY and Sharon L. Heincy, Plaintiffs,

v.

SUPERIOR COURT OF the STATE OF CALIFORNIA, Defendant.

Bankruptcy No. 84–04106–LM13.
Adv. No. C85–0751–LM13.

United States Bankruptcy Court, S.D. California.

March 26, 1986.

Harry Heid, San Diego, Cal., trustee.

James W. Dempsey, Dempsey, Dempsey & Duff, Vista, Cal., for debtors.

Joseph J. Boylan, Fallbrook, Cal., creditor.

George W. Clarke, Deputy Dist. Atty., Susan J. Boyle, Deputy County Counsel, San Diego, Cal., for Superior Court, State of Cal.

## MEMORANDUM DECISION

LOUISE DeCARL MALUGEN, Bankruptcy Judge.

Plaintiffs and debtors Charles and Sharon Heincy have filed a complaint to enjoin the Superior Court, County of San Diego, State of California, from enforcing an order for restitution entered in criminal case No. CR70040 in November 1984. The debtors have also filed an objection to the Chapter 13 proof of claim filed by Joseph and Trudi Boylan.

The issue raised by both the complaint for injunction and the claim objection is whether the order for restitution should be stayed pending the debtors' performance of their confirmed Chapter 13 plan.

## STATEMENT OF FACTS

In June 1983, Boylan hired Charles Heincy ("Heincy") to oversee completion of a remodeling project on Boylan's home. They entered into a verbal agreement in which Heincy was to receive $6,000 in three progressive payments of $2,000 each. Burdened with cash flow problems on other projects and having fallen behind in his house payments, Heincy asked for and received the last two progress payments prior to completion of the Boylan job. In September 1983, Heincy asked Boylan if he could borrow $6,500 to pay new delinquencies in his house payments, his business taxes and out of pocket costs on another job. Heincy promised to repay Boylan out of fees he expected to receive from other projects. Boylan agreed to lend Heincy $5,700.

In early December 1983, Boylan discovered that $7,500 he had paid to Heincy for the bills submitted by a roofing contractor were not used to pay the contractor but instead were embezzled by Heincy. When confronted, Heincy promised to repay Boylan not only the embezzled amount, but also the $5,700 loan and all of the money he had received for his services if Boylan wouldn't prosecute. An attorney friend of Heincy attempted to arrange a satisfactory repayment schedule but was unsuccessful and, in February 1984, Boylan lodged a written complaint with the Office of the District Attorney.

On March 23, 1984, Heincy filed a Chapter 7 petition listing as creditors, *inter alia*, Boylan as having an unsecured claim in the sum of $13,000. In May 1984, notice was sent to all creditors setting a bar date of July 9, 1984, to file complaints to determine dischargeability of debts or objecting to discharge. No such complaints were filed during this proceeding.

In August 1984, Heincy was charged with and pled guilty to one count of grand theft. He was ordered to appear on September 19, 1984 for a probation hearing and sentencing report. A recommendation was made by the probation officer that the imposition of the sentence on the debtor be suspended for a period of five years on conditions which included the debtor serve two days in custody and pay restitution in the amount of $17,250 at the rate of $400 per month. The $17,250 amount was the total of all monies paid Heincy by Boylan.

On September 24, 1984, the debtors were granted their discharge in their Chapter 7 proceeding. That same day they filed a

voluntary petition under Chapter 13 listing Boylan as a creditor in the amount of $7,250.[1]

At the sentencing hearing held November 19, 1984, the Superior Court ordered suspension of Heincy's criminal sentence for a period of five years, provided that Heincy serve two days in custody, perform thirty days of public service and pay restitution in the amount of $17,250 at the rate of $400 per month, commencing January 1, 1985.

On December 11, 1984, this Court entered its order confirming Heincy's plan of reorganization under Chapter 13. That plan providing for payments of $486 per month will pay 100 percent of Heincy's creditors, including a scheduled amount of $7,250 denominated "restitution" payable to Boylan.

When the debtors found it financially impossible to comply with the two separate court orders (the Chapter 13 confirmation order and the Superior Court restitution order), they filed their complaint to enjoin enforcement of the restitution order. Thereafter, Boylan filed a claim in Heincy's Chapter 13 case in the amount of $17,250, $10,000 more than was scheduled by the debtors. Heincy then filed his objection to Boylan's claim.

A temporary restraining order and preliminary injunction has issued against the Superior Court for the State of California ("State"), pending a hearing on the merits of this matter. Thereafter, a hearing on the claims objection was held, at which both Boylan and Heincy testified as to the nature of Boylan's claim.

## ISSUES

I. Did the restitution order create a debt; and, if so, was it discharged in Heincy's Chapter 7 case?

II. Should the Bankruptcy court enjoin enforcement of the State's order of restitution or further criminal prosecution of Heincy for his failure to comply with it?

III. What is the amount of Boylan's claim, if any, in Heincy's Chapter 13 proceeding?

## DISCUSSION

I. *Did The Restitution Order Create A Debt; And, If So, Was It Discharged In Heincy's Chapter 7 Case?*

A. *Did The Restitution Order Create A Debt?*

The State of California, citing *In re Magnifico*, 21 B.R. 800, 9 BCD 670 (Bankr.D. Ariz.1982), argues that:

[W]ith restitution, the victim has no right to payment. It is the criminal court which sets the restitution amount and if it is not paid the victim cannot proceed against the debtor to enforce payment, but instead the probation officer must report the event of nonpayment to the court which in turn determines if a violation of probation has occurred. *Id.* at 802, 9 BCD 670.

*See also, In re HBG Servicenter*, 45 B.R. 668, 12 BCD 740 (Bankr.E.D.N.Y.1985); *In re Button*, 8 B.R. 692, 7 BCD 307 (Bankr. W.D.N.Y.1981).

Because the victim has no immediate right to payment, it is contended that restitution should not be considered a debt.

The Bankruptcy Code defines a debt as liability on a claim. [11 U.S.C. § 101(11)]. "Claim" is further defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured ...." [11 U.S.C. § 101(4)(A)].

The recent decision of *In re Carolyn Robinson*, 776 F.2d 30, 13 BCD 1061 (2d Cir.1985) *cert. granted, Kelly v. Robinson*, —— U.S. ——, 106 S.Ct. 1181, 89 L.Ed.2d 298 (1986) addressed the question of

---

**1.** Although the Superior Court determined the debtor defrauded Boylan of the sum of $17,250, Heincy contends it is much less. Heincy's schedules list the debt to Boylan in the amount of $7,250.

whether a restitution order fell within the meaning of debt as defined by the Code. In the *Robinson* case, the debtor was convicted of larceny for having wrongfully received $9,932.95 from the victim. As part of her sentence in the criminal action, a state court ordered Robinson to make restitution in the exact amount wrongfully received. Shortly thereafter, the debtor filed a Chapter 7 proceeding, listing the victim and the probation office as claimants. The bar date for filing objections to the discharge and complaints to determine dischargeability passed without a complaint being filed by either the probation office or the victim. After, Robinson received her Chapter 7 discharge, the probation office attempted to enforce the state court order of restitution. After a trial on the merits, the Bankruptcy Court held that the state court's order of restitution did not create a debt, and the debtor's obligation to pay restitution was unaffected by the discharge order. The District Court affirmed. In reversing, the *Robinson* court observed:

> [T]he literal terms of Section 101(4)(A) are sufficiently broad—apparently by Congressional design—to define as a debt a restitution obligation as to which any person or entity, not just the crime victim, has a right to repayment. *Id.* at 34.

■ Since here, as in *Robinson*, the state has a right to payment and can enforce that right in a court of law, the debtor's restitution obligation falls within the Code's definition of debt. The *Robinson* court's reasoning is supported by the legislative history to § 101(4)(A) which reads, in part:

> All claims against the debtor whether or not contingent or unliquidated will be dealt with in the bankruptcy case .... The proposed law will permit a complete settlement of the affairs of a bankrupt debtor, and complete discharge and a fresh start ....
>
> \* \* \* \* \* \*
>
> ... [Section 101(4)] adopts an even broader definition of claim than is found in the present debtor rehabilitation chap-

ters .... By this broadest possible definition and by the use of the term throughout Title 11 ... the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case. It permits the broadest possible relief in the bankruptcy court. H.R. No. 95–595, 95th Cong. 1st Sess. 309 (1977); S.Rep. No. 95–989, 95th Cong. 2d Sess. 21 (1978).

Further, this Court is not persuaded by the State's argument that a restitution order does not create a "civil" liability and therefore is outside the parameters of our jurisdiction. This argument was rejected in the case of *In re Brown*, 39 B.R. 820, 11 BCD 1048 (Bankr.M.D.Tenn.1984) which also found restitution to be a debt. In *Brown*, the debtor had driven his car into the victim's home, causing $1,500 in damage. Brown pled guilty to "driving under the influence" and was ordered to pay $1,500 restitution to his victim. The victim had no right to enforce the restitution order and could only report non-payment to the district attorney. The court held the restitution obligation dischargeable and enjoined the district attorney from attempting to collect it. The court reasoned:

> [D]ebts (are not limited to) obligations incurred in consumer or business transactions, but include *all* obligations however incurred.
>
> \* \* \* \* \* \*
>
> Had the [victim] gone into state civil court and reduced his debt to a judgment in the absence of an exception to discharge or dischargeability, the civil judgment along with the debt would have been discharged. *Id.* at 822, 11 BCD at 1049.

Boylan could have filed a civil collection action to enforce repayment of the loan, a breach of contract action to recover unearned progress payments and/or a conversion action to recover the embezzled funds. All of these debts, except, perhaps, that debt arising out of the embezzlement, would have been discharged in Heincy's

Chapter 7 proceeding. Instead, Boylan turned to the state criminal court to seek remedy. He estimated his damages as $17,250[2] and this is the exact amount of restitution ordered.[3]

If the Bankruptcy Code said that only orders to pay money by *civil* courts are debts for bankruptcy purposes then credence could be given to the defendant's argument that a criminal court restitution order does not embody a "debt" dischargeable in bankruptcy. However, nothing in the Bankruptcy Code suggests that only civil courts enter orders to pay money that are subject to discharge in bankruptcy. A restitution order by a criminal court no less acknowledges the existence of a debt than an order of a civil court reducing that claim to judgment. The fact that a criminal court might participate in enforcement or collection of the debt between the victim and the debtor/defendant does not make the underlying ·obligation a "non-debt" for bankruptcy purposes. *Id.*

The Court's position is further supported by Cal.Gov't.Code § 13968(b) which states "A restitution fine shall be deemed a debt of the defendant owing to the state ... excepting any amount the defendant has paid to the victim as a result of the crime ...."

The Court is very much aware that restitution has a rehabilitative quality designed to ensure that the defendant leads a law abiding life thereafter. *People v. Richards,* 17 Cal.3d 614, 620, 131 Cal.Rptr. 537, 552 P.2d 97 (1976). But, it is our inescapable conclusion that the thrust of the Superior Court's restitution order is debt servicing in nature and designed to make Boylan whole. As discussed above, Boylan's damage estimate is identical to the restitution order. Boylan testified that monies paid to the State pursuant to this order are turned over directly to him without any deduction by the State. The Court does not contend that this State is a mere collection agency. On the other hand, we cannot turn a blind eye to the obvious. Monies owed create a debt. "If the right of payment and liability in a criminal court order of restitution were intended to be outside the realm of debt for bankruptcy purposes, then how simple it would have been for Congress to include appropriate language in the Bankruptcy Code." *Brown,* 39 B.R. at 822–23, 11 BCD at 1049–50.

The Court concludes that the restitution order of the State criminal court in this case created a debt as defined by 11 U.S.C. § 101(4) and (11).

**B.** *Was The Debt Discharged In Heincy's Chapter 7 Case?*

**(i)** *The Obligation To Boylan.*

11 U.S.C. § 727(b) says that "[E]xcept as provided in section 523 of this title, a discharge under subsection (a) of this section discharges a debtor from all debts that arose before the date of the order for relief ...." The order for relief was entered on March 23, 1984. The Boylan obligation was incurred prior to the petition date and was eligible to be discharged under § 727(b) of the Code unless it was excepted by § 523.

Section 523 provides that certain debts may be determined to be non-dischargeable in a bankruptcy case. Section 523(a)(2)(A) excepts debts incurred through "false pretenses, a false representation or actual fraud ..." from discharge; subsection (a)(4) excepts debts incurred through "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

█ Some part of the Boylan debt would likely have been excepted from discharge were it not for § 523(c). When read in

---

**2.** The probation officer's report says that "Joseph Boylan ... estimates his losses as ... $17,250." *People of State of California v. Charles Heincy,* Probation Officer's Report filed September 19, 1984 ("Probation Report") at 4.

**3.** Reliance by the State on *Magnifico* is misplaced since the restitution order in that case was no where near the amount of damages sustained by the victims. The record indicates total damage of over $33,000. Restitution was ordered in the sum of $5,500. *Magnifico,* 21 B.R. at 801, 9 BCD at 671.

conjunction with B.R. 4007, § 523(c) requires creditors to file complaints objecting to discharge under § 523(a)(2)(A) or § 523(a)(4) not later than 60 days following the first date set for the debtor's § 341(a) hearing. The 60-day period in Heincy's Chapter 7 case expired on July 9, 1984, without any such complaints being filed. The Code is quite clear that affirmative action must be undertaken by the creditor to except the debt from discharge. "If the creditor does not act, the debt is discharged." H.R. No. 95–595, 95th Cong., 1st Sess. 365 (1977); S.R. No. 95–989, 95th Cong., 2d Sess. 80 (1978), U.S. Code Cong. & Admin.News 1978, pp. 5787, 5866, 6321. Because Boylan failed to act, the debt was discharged.

### (ii) *The Obligation To The State.*

■ 11 U.S.C. § 523(a)(3)(B) excepts from discharge debts "neither listed nor scheduled ... with the name ... of the creditor to whom such debt is owed, in time to permit ... (a) timely request for a determination of dischargeability of such debt." Formal charges were brought against the debtor on August 7, 1984, and the restitution order was entered on November 19, 1984. The State was not listed in the schedules, nor was it aware of the debtor's Chapter 7 in time to file a timely complaint determining the dischargeability of the debt. The Court concludes the debt owed to the State was not discharged in Heincy's Chapter 7 case.

II. *Should The Bankruptcy Court Enjoin Enforcement Of The Superior Court's Order Of Restitution Or Further Criminal Prosecution Of Heincy For His Failure To Comply With It?*

The Bankruptcy Court is empowered to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [Title 11]." 11 U.S.C. § 105(a). Our concern is whether or not California's restitutionary scheme is in conflict with and renders ineffective the

Court's powers as established by Congress. What is at issue here is the power of the State to enforce an order of restitution regardless of an order issued by this Court implementing the debtor's Chapter 13 plan. Strong policy considerations weigh against federal interference with state court criminal proceedings. *Kugler v. Helfant,* 421 U.S. 117, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975); *rehearing denied,* 421 U.S. 1017, 95 S.Ct. 2425, 44 L.Ed.2d 686 (1975). However, a federal court may enjoin a state criminal prosecution where irreparable injury can be shown. *Perez v. Ledesma,* 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971). Evidence before this Court indicates such harm will result to the debtor should the State be allowed to enforce its restitution order.[4]

The majority of courts that have considered this issue concur that when the principal motivation behind enforcement of a criminal statute is to collect a dischargeable debt, the Bankruptcy Court may enjoin the criminal prosecution. *In re Kaping,* 13 B.R. 621, 8 BCD 16 (Bankr.D.Or.1981); *see also In re Penny,* 414 F.Supp. 1113 (W.D. N.C.1976); *In re Lake,* 11 B.R. 202 (Bankr. S.D. Ohio 1981); *In re Reid,* 9 B.R. 830, 4 CBC2d 196 (Bankr.M.D.Ala.1981); *In re Caldwell,* 5 B.R. 740, 6 BCD 892 (Bankr.W. D.Va.1980); *In re James,* 10 B.R. 2, 2 CBC2d 322 (Bankr.W.D.N.C.1980).

When the issue of governmental action to collect a dischargeable debt was addressed in the Ninth Circuit Bankruptcy Appellate Panel decision of *In re Thomassen,* 15 B.R. 907, 8 BCD 530 (9th Cir. BAP 1981), the court agreed with the prevailing rule in this area. In *Thomassen,* the debtor, a physician, was under investigation by the Board of Medical Quality Assurance ("Board") for professional misconduct arising out of his alleged fraud in receiving duplicate payments from an insurance company and for acts of medical malpractice. The debtor contended that the Board's license revocation proceeding was an attempt to force him to pay debts owed to

---

**4.** Heincy testified that he would be unable to pay both his Chapter 13 plan payments and his restitution order and his plan would fail if enforcement of the restitution were not enjoined.

persons he allegedly defrauded and that such action was stayed under the Code. The Court rejected this contention, drawing a distinction between governmental actions which are aimed at obtaining a pecuniary advantage for its citizens, and those actions which represent a direct application of the state's police or regulatory powers, and stated, "The former are stayed under 11 U.S.C. § 362(a)(1); the latter are not." *Thomassen* at 909, 8 BCD at 531.

In this case, 11 U.S.C. § 523(a)(7) is the only code section which could apply to except Heincy's restitution debt from discharge. That section provides that a debt will be excepted from discharge "to the extent that such debt is for a fine, penalty or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for *actual pecuniary loss*...." (emphasis added) Any analysis of the nature of Heincy's restitution order must begin with Chapter 5 of the California Government Code, which is entitled *Indemnification Of Private Citizens.* Section 13959 of that chapter says, "It is in the public interest to assist residents of the State of California in obtaining restitution for the pecuniary losses they suffer as a direct result of criminal acts...."

In furtherance of that public interest, Heincy's probation officer discussed at length Boylan's alleged damages from Heincy's action. His conclusion was that Heincy should repay Boylan all of his losses, including a portion of the sums paid to Heincy for his services and the loan, as well as the embezzled funds.[5] Other elements of Boylan's alleged pecuniary losses were discussed in the report even though they, like the loan and the payments for Heincy's services, do not appear to be "a direct result of [his] criminal acts...."[6] The probation officer went on to recommend restitution in the amount of Boylan's actual claimed losses ($17,250). The proba-

tion officer's report, taken together with Boylan's testimony as summarized above, lead inexorably to the conclusion that the restitution order was designed to compensate Boylan and therefore is a dischargeable debt.

The Court is aware of the holding in *U.S. v. Carson,* 669 F.2d 216, 6 CBC2d 105 (5th Cir.1982), in which the court upheld the right of a district court judge to order restitution to a debtor's victim for losses caused by a criminal offense where the debt had already been discharged in bankruptcy. However, the *Carson* decision did not involve a restitution order in conflict with a bankruptcy court order which had confirmed the debtor's Chapter 13 plan.

Under the "Federal Abstention Doctrine" the interests of equity and comity must be considered before a federal court interferes with a legitimate state function. *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Congress is interested in providing financial relief and a fresh start for all debtors. The State is interested in assisting its residents in obtaining restitution for pecuniary losses they suffer as a result of criminal acts. Since Heincy has stated his intention to pay his victim through his Chapter 13 plan, the State's interests are satisfied by the confirmation of the plan and the State, like any other creditor holding a claim for a dischargeable debt, should file its claim in his Chapter 13 case. The full performance of the Chapter 13 plan will provide a fresh start for the debtor and will assist the debtor's victim in obtaining restitution for the pecuniary losses he has suffered. Permitting enforcement of the restitution order would result in a collapse of the debtor's plan and provide an unfair advantage to one creditor, who happens to have the State collecting, indirectly, a debt which could not be collected directly because of the Chapter 13 proceeding.

**5.** *Probation Report* at 4–5.

**6.** For example, the probation officer discussed the other "legitimate claims of Boylan arising out of Heincy's failure to complete the job, such as having to obtain new subcontractors at a

greater cost to complete the remodeling project. He also discussed Boylan's view he should be paid interest on his losses. *Probation Report* at 5.

Pursuant to 11 U.S.C. § 105(a), the State is hereby enjoined from enforcing the restitution order against Heincy through collection, imprisonment or otherwise during the pendency of Heincy's Chapter 13 case.

III. *What Is The Amount Of Boylan's Claim, If Any, In Heincy's Chapter 13 Case?*

As previously discussed, Boylan's failure to act in Heincy's Chapter 7 case caused any debt to Boylan to be discharged. Therefore, Boylan has no enforceable claim in the present Chapter 13 case. The only enforceable claim against Heincy in his Chapter 13 case is that asserted by the State.

This Memorandum shall constitute findings of fact and conclusions of law as required by Bankruptcy Rule 7052. Counsel for Heincy is directed to prepare an order in accordance with this Decision within ten (10) days of its entry.