Opinion
 

 HASTINGS, J.
 

 Robert Gruntz appeals from the judgment entered following a jury trial in which he was convicted of the misdemeanor of failing to provide for his two minor children (Pen. Code, § 270). He was sentenced to 360 days in county jail. He appealed to the superior court, which affirmed the judgment in an opinion filed September 1, 1993, which was certified for partial publication. We ordered the matter transferred to this court pursuant to rule 62 of the California Rules of Court on October 19, 1993.
 

 As set forth below, we affirm the judgment of the municipal court.
 

 Factual And Procedural Background
 

 Appellant and Susannah Gruntz were married in 1974. They had a boy, B. in 1974 and a girl, M. in 1976. Susannah and appellant separated and were divorced in 1978. Susannah received custody of the children and appellant was ordered to pay $300 month in child support. Appellant initially began making payments as ordered, but shortly thereafter, fell behind. By October 1988, he was in arrears $5,100.
 

 Appellant was employed as a pari-mutuel clerk for the Los Alamitos race track, trained horses and had also completed law school. In October 1988, he filed a voluntary petition for relief under chapter 13 of title 11, United States Code, hereinafter Bankruptcy Code (11 U.S.C. § 1301 et seq.).
 
 [1]
 
 In his statement of assets and liabilities, appellant listed his child support obligations and also listed the past-due support obligations of $5,100. Appellant’s chapter 13 plan, filed November 23, 1988, provided that the $5,100 arrearage would be paid in full over a period of three years, and after confirmation of the plan, current child support payments would be made directly to Susannah. The plan also provided that appellant would make monthly
 
 *416
 
 payments to the chapter 13 trustee in the amount of S591.50.
 
 [2]
 
 Beginning January 1989, appellant began making payments to the trustee and in 1989 he made the following payments: January 1989—$591.50; February 1989— $1,183; March 1989—$591.50; April 1989—$591.50; and June 1989— $1,193.
 
 [3]
 
 He made no further payments during 1989.
 

 In September 1989, the bankruptcy court ruled that appellant was not eligible to be a debtor under chapter 13 pursuant to Bankruptcy Code section 109(e) and in December 1989 the case was converted to one under chapter 11 of the Bankruptcy Code.
 
 [4]
 
 In 1990 appellant paid a total of $750 to Susannah, $600 in January and $150 to her in May.
 

 In October 1990, the district attorney filed a criminal complaint against appellant alleging a violation of Penal Code section 270, failure to provide support for his two children from July 21, 1989 until July 20, 1990. Appellant unsuccessfully attempted to move for dismissal on the ground that the criminal proceedings were in violation of the automatic stay of the Bankruptcy Code. (11 U.S.C. § 362.)
 
 [5]
 
 Following a two-day jury trial, appellant was found guilty and he was sentenced to three hundred sixty days in county jail. No fine was assessed against him.
 

 Following his appeal to the superior court, the appellate department issued a memorandum affirming the judgment, which was later certified for partial publication. We then ordered transfer of this case to this court.
 

 Contentions on Appeal
 

 Appellant contends that he cannot be criminally prosecuted for failure to pay child support while under the jurisdiction of the bankruptcy court; that he did not “willfully” refuse to make payments as required under Penal Code section 270 but was prohibited from doing do by the bankruptcy court; and
 
 *417
 
 that the trial court erred in admitting into evidence his chapter 11 disclosure statement filed in bankruptcy court.
 

 Discussion
 

 In order to facilitate discussion of appellant’s contentions, we set forth the following summary of support payments made by appellant and relevant events in the municipal court and the bankruptcy court.
 

 It is undisputed that from July 21, 1989, to July 20, 1990, the period alleged in the complaint, appellant made only two payments to Susannah, one payment of $600 in January 1990 and one payment of $150 in May 1990, for a total of $750.
 
 [6]
 
 According to the terms of the support order, he should have made payments during that period totalling $7,200.
 

 It is also undisputed that during the period alleged in the complaint, appellant was under the jurisdiction of the bankruptcy court. In July 1989, appellant was in chapter 13 proceedings. In December 1989, the case was converted to one under chapter 11. In May 1990, appellant’s plan for reorganization was confirmed, but he still technically remained under the jurisdiction of the bankruptcy court, chapter 11, when the criminal complaint was filed. (11 U.S.C. §§ 1141, 1142;
 
 Goodman
 
 v.
 
 Phillip R. Curtis Enteprises, Inc.
 
 (4th Cir. 1987) 809 F.2d 228, 232.)
 

 1.
 
 The automatic stay does not prohibit prosecution under Penal Code section 270.
 

 Appellant contends that the criminal proceedings violated the automatic stay provisions of the Bankruptcy Code, 11 United States Code section 362(a)(1). We find this to be incorrect.
 

 Section 362(a)(1) of the Bankruptcy Code provides as follows: “Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. 78eee(a)(3)), operates as a stay, applicable to all entities, of— [f] (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under
 
 *418
 
 this title, or to recover a claim against the debtor that arose before commencement of the case under this title[.]”
 
 [7]
 

 Section 362(b)(1) of the Bankruptcy Code provides an exemption from the automatic stay for “the commencement or continuation of a criminal action or proceeding against the debtor.”
 

 Appellant argues that this action does not fall within this exemption because the primary function of Penal Code section 270 is to enforce payment of past due support, not to punish criminal conduct. In support of this contention, appellant cites several bankruptcy cases,
 
 In re Heincy
 
 (Bankr. S.D.Cal. 1986) 58 B.R. 930;
 
 In re Kaping
 
 (B.R. D.Ore., 1981) 13 B.R. 621;
 
 In re Thomassen
 
 (Bankr. 9th Cir., 1981) 15 B.R. 907; and
 
 Hucke
 
 v.
 
 State of Or.
 
 (9th Cir. 1993) 992 F.2d 950. We find these cases are not on point.
 

 In
 
 Heincy,
 
 the Bankruptcy Court for the Southern District of California enjoined the
 
 state from
 
 enforcing a criminal restitution order against a debtor in bankruptcy who had been convicted of grand theft (embezzlement) (58 B.R. 930). The matter was appealed and the Ninth Circuit held the injunction restraining the state from enforcing the restitution order should not have been granted.
 
 [8]
 

 (In re Heincy
 
 (9th Cir. 1988) 858 F.2d 548.) The appellate opinion did not discuss the applicability of the automatic stay provisions, but instead, based its decision on the federal abstention doctrine enunciated in
 
 Younger
 
 v.
 
 Harris
 
 (1971) 401 U.S. 37, 43-49 [27 L.Ed.2d 669, 675-679, 91 S.Ct. 746, 750-753] and principles of federal injunctive relief.
 
 (In re Heincy, supra,
 
 858 F.2d at pp. 549-550.)
 

 In
 
 In re Thomassen, supra,
 
 15 B.R. 907, the Bankruptcy Appellate Panel for the Ninth Circuit held that the Bankruptcy Court for the Central District of California did not err when it refused to enjoin administrative proceedings to revoke a debtor in bankruptcy’s medical license. The debtor argued that the administrative proceedings were not an exercise of the state’s “police or regulatory” power (11 U.S.C. § 362(b)(4)), and thus were subject to the automatic stay. The bankruptcy appellate panel conceded that the “police or regulatory powers” exception to the automatic stay provisions does not apply when the exercise of those powers is for a pecuniary purpose (15 B.R. at p. 909) but that the instant license revocation proceedings were not for a
 
 *419
 
 pecuniary purpose and were related to the health or safety of the public. (15 B.R. at p. 910.)
 
 [9]
 

 In
 
 Hucke
 
 v.
 
 State of Or., supra,
 
 992 F.2d 950, a convicted rapist was granted probation and ordered to pay a restitution fine. Within six months, during which period he had paid nothing towards the restitution order, he filed a chapter 13 bankruptcy petition. He was later found in violation of his probation and was resentenced to three years in prison. (992 F.2d at p. 952.) The district court held that since the probation revocation was based on the failure to pay a debt (the restitution order), it was void under the automatic stay and the debtor was ordered released from prison. On appeal, the Ninth Circuit found there was no violation of the automatic stay and that the state court acted within its discretion in revoking probation. (992 F.2d at p. 954.)
 

 In
 
 In re Kaping,
 
 after filing a petition under chapter 7 of the Bankruptcy Code, a debtor was indicted for failure to pay child support. His wife’s claim for past due support had been assigned to the State of Oregon. The Bankruptcy Court for the District of Oregon, attempting to reconcile the provisions of sections 105 and 362 of the Bankruptcy Code, held that criminal prosecution which is primarily motivated to recover a dischargeable debt may be enjoined by the bankruptcy court. (13 B.R. at p. 623.)
 
 [10]
 
 Based on the erroneous conclusion that the past due support was dischargeable and because virtually all sentencing orders issued by that county’s state court for violation of the child support statute were conditioned upon restitution for past due amounts, the court enjoined the state from further criminal prosecution of the debtor.
 
 (Id.
 
 at pp. 623-624.)
 

 Kaping
 
 is worthy of discussion because it is the only federal or bankruptcy court case we have found that discusses incarceration for failure to pay child support by a debtor in bankruptcy. However,
 
 Raping
 
 relies on the “principal motivation” test in assessing the applicability of the stay to the support statute. That test is no longer followed in the Ninth Circuit which relies upon
 
 *420
 
 the “bad faith” or
 
 Younger
 
 abstention doctrine
 
 [11]
 

 (In re Heincy, supra,
 
 858 F.2d at p. 549; see also
 
 In re Asay
 
 (Bankr. D.Mont. 1992) 141 B.R. 201, 203, and
 
 Matter of Taylor
 
 (Bankr. D.Md. 1984) 44 B.R. 548, 550); however, even that test applies only to dischargeable debts.
 
 (In re Kaping, supra,
 
 13 B.R. at p. 623;
 
 In re Penny
 
 (W.D.N.C. 1976) 414 F.Supp. 1113;
 
 In re Lake
 
 (Bankr. S.D.Ohio 1981) 11 B.R. 202.) Child support is not a dischargeable debt. (11 U.S.C. § 523(a)(5);
 
 In re Marriage of Henderson
 
 (1990) 225 Cal.App.3d 531, 533-534 [275 Cal.Rptr. 226];
 
 In re Pacana
 
 (Bankr. 9th Cir. 1991) 125 B.R. 19, 22.) In
 
 Raping,
 
 the support debt was erroneously concluded to be dischargeable. Moreover, in
 
 Raping,
 
 the debtor presented compelling affirmative evidence that the state court had issued an overwhelming number of orders conditioning prison sentences for nonsupport on restitutionary orders. No such order was made in this case, nor was similar evidence of the court’s intent presented.
 
 [12]
 

 Appellant also cites two California Supreme Court cases to support his contention that Penal Code section 270 should not be exempted from the automatic stay.
 
 Walker
 
 v.
 
 Superior Court
 
 (1988) 47 Cal.3d 112, 125 [253 Cal.Rptr. 1, 763 P.2d 852], a case which held that a parent could be criminally prosecuted for treating a seriously ill child with prayer instead of medical treatment, described Penal Code section 270 as a “fiscal support provision.” In
 
 People
 
 v.
 
 Sorensen
 
 (1968) 68 Cal.2d 280 [66 Cal.Rptr. 7, 437 P.2d 495], a father was held liable for support for a child conceived by artificial insemination after the mother had applied for public assistance for the child. The court held a biological father was liable for support under Penal Code section 270 whether or not the child was supported by another. The court stated: “Rather than punishment of the neglectful parents, the principal statutory objectives [of section 270] are to secure support of the child and to protect the public from the burden of supporting a child who has a parent able to support him.” (68 Cal.2d at p. 287.)
 

 We do not understand the language of these cases to mean that conviction under Penal Code section 270 can be characterized as the enforcement of a money judgment. Other California Supreme Court cases have held that familial support obligations do not constitute a “debt” within the meaning of
 
 *421
 
 the constitutional provision against imprisonment for a debt.
 
 (Bradley
 
 v.
 
 Superior Court
 
 (1957) 48 Cal.2d 509, 519 [310 P.2d 634];
 
 Miller
 
 v.
 
 Superior Court
 
 (1937) 9 Cal.2d 733, 739 [72 P.2d 868].) “Support” as required by this section, is not necessarily only a monetary obligation. The statute specifically refers to “clothing, food, shelter, or medical attendance” and does not refer to failure to make support payments. Enforcement of the statute does not create a debtor/creditor relationship between appellant and the state, but appears to be designed to coerce the parent into recognizing his or her obligations to the child. (Cf.
 
 People
 
 v.
 
 Washburn
 
 (1979) 97 Cal.App.3d 621, 625-626 [158 Cal.Rptr. 822].)
 

 Notwithstanding the practical effect that prosecution under this section may have, we find that the current proceeding was a criminal proceeding which falls within the exclusion of Bankruptcy Code section 362(b)(1). Therefore, the automatic stay did not protect appellant from the criminal prosecution.
 

 2.
 
 The jury properly found a willful failure to make payments.
 

 Penal Code section 270 provides in pertinent part: “If a parent of a minor child willfully omits, without lawful excuse, to furnish necessary clothing, food, shelter or medical attendance, or other remedial care for his or her child, he or she is guilty of a misdemeanor punishable by a fine not exceeding two thousand dollars ($2,000), or by imprisonment in the county jail not exceeding one year, or by both such fine and imprisonment.”
 

 While “[t]he absence of lawful excuse is an element of the offense . . . [s]ection 270 relaxes the prosecutor’s burden by creating a presumption of no lawful excuse upon proof of abandonment, desertion or failure to provide. [Citations.] This presumption imposes on the defendant the burden of creating a reasonable doubt as to whether there was a lawful excuse for the failure to provide. [Citation.]”
 
 (People
 
 v.
 
 Dewberry
 
 (1992) 8 Cal.App.4th 1017, 1021 [10 Cal.Rptr.2d 800].)
 

 Appellant contends that he did not fail to pay child support “willfully or without lawful excuse” as required by Penal Code section 270 because he submitted himself to the bankruptcy proceedings. His argument is basically that merely by filing bankruptcy he had a lawful excuse not to pay child support. This is incorrect. The federal courts have consistently been loathe to interfere in family law matters, especially where the issue is child support.
 

 “The Supreme Court has long favored state court retention of exclusive control over the collection of child support. See
 
 In re Burrus,
 
 136 U.S. 586,
 
 *422
 
 593-594 . . . [Other citations]. Pursuant to its police power, [a state] has a strong and compelling interest in protecting the welfare of its dependent citizens. [Citations.] We agree with the district court that it would result in a great injustice to require children to await a bankruptcy court’s confirmation of a debtor’s Chapter 13 plan before permitting them to enforce their state court-determined right to collect past due support payments. The bankruptcy code may not be used to deprive dependents, even if temporarily, of the necessities of life.”
 
 (Caswell
 
 v.
 
 Lang
 
 (4th Cir. 1985) 757 F.2d 608, 610.)
 

 “Filing a bankruptcy case to defraud a former spouse or to evade the duty to support dependent children has long been recognized as an abuse of the bankruptcy process. See, e.g.,
 
 In re Victory Construction Co., Inc.
 
 (B.R.] C.D.Cal. 1981) 9 [B.R.] 549, 559, appeal dismissed as moot, 37 [B.R.] 222 ([Bankr.] 9th Cir. [] 1984);
 
 Gonzalez Hernandez
 
 v.
 
 Borgos,
 
 343 F.2d 802 (1st Cir. 1965).”
 
 (In re Warner
 
 (Bankr. C.D.Cal. 1989) 115 B.R. 233, 242.) The court in
 
 Warner
 
 went on to state that filing a chapter 13 case to prevent collection of child support arrears under state law did not constitute “good faith” required for confirmation of a chapter 13 plan and refused to confirm the plan.
 

 Finally, this issue was addressed in
 
 In re Heflin, supra:
 
 “The primary incentive to chapter 13 debtors is that they are able to retain most of their assets while satisfying at least a portion of their creditors’ claims. However, chapter 13 does not relieve chapter 13 debtors of their legal and moral obligations to provide current support to their children.
 
 In the event that a debtor is unable to provide current support to his or her children and fund a chapter 13 plan at the same time, the debtor must simply forego the opportunity to retain the assets by participation in a chapter 13.
 
 The debtor has an alternative for financial relief under chapter 7 of the Bankruptcy Code. In no event, will this court countenance the funding of a chapter 13 plan at the expense of a debtor’s children.”
 
 (In re Heflin, supra,
 
 145 B.R. at p. 563, fn. 7.)
 

 We conclude that the mere fact of filing a chapter 13 petition does not support a finding of lawfulness or lack of willfulness for purposes of Penal Code section 270, although the circumstances of filing and the fact that appellant was involved in bankruptcy proceedings would have relevance to these issues for jury consideration.
 
 [13]
 

 Appellant makes another argument, varying on this theme: that while he was in bankruptcy, he was compelled to follow the orders of the bankruptcy
 
 *423
 
 court and therefore his actions were not willful. To the extent that his argument relies upon the general concept that he was legally bound to follow the orders of the bankruptcy court, without any further showing, we disagree, based upon the authorities cited and quoted above. Again, these would be considerations for the jury in determining willfulness. The evidence does not support such a conclusion.
 

 During the time that appellant was in the chapter 13 proceedings, he had sufficient monies to make payments as summarized by the superior court appellate department: “On appeal, appellant has not indicated where the record demonstrates that he was financially unable to make child support payments beyond the mere fact of his bankruptcy proceedings.[
 
 14
 
 ] In appellant’s Chapter 13 statement, his monthly income was budgeted at $6,500 while his monthly expenses were budgeted at $3,185 which included the $300 child support amount. From March 17, 1989, to December 13, 1989, appellant made only three payments under the plan despite the fact that appellant’s monthly budget called for payments of $300 per month for the nondischargeable obligations during that period. It does not appear that appellant ever testified that he was unable to make the child support obligations. Consequently, we conclude that any payments made by appellant to the trustee under a Chapter 13 voluntary bankruptcy plan cannot be said to be a ‘lawful excuse’ without any additional showing on the part of a defendant.” (Fns. omitted.)
 

 To the extent that appellant relies upon the court order in his plan for reorganization in the chapter 11 proceeding, that order was not signed by the court until May 30, 1990. He made only two payments totalling $750 between December 1989 and May 30, 1990. There is no evidence that after his proceeding was transferred to chapter 11, his income and expenses changed from the amounts indicated in his chapter 13 statement. The evidence clearly supports an inference he was able to make such payments but willfully refused to do so.
 

 3.
 
 The trial court did not err in admitting appellant’s disclosure statement into evidence.
 

 Appellant contends the court erred in allowing admission of the disclosure statement he filed in conjunction with his chapter 11 plan. He contends the exhibit was unduly prejudicial since it listed assets that he could not technically sell while under the jurisdiction of the bankruptcy
 
 *424
 
 court, but nevertheless gave the jury the mistaken impression that he had substantial assets.
 

 At trial, appellant’s counsel argued that the schedule should be excluded under the “collateral impeachment rule,” under Evidence Code section 352 because it was more prejudicial than probative, and that the schedule was not properly authenticated. The trial court overruled the objection stating, “Obviously it’s prejudicial, but I make a finding that by weighing the probative value . . .it’s not outweighed by the prejudicial effect it has. . . . ffl I think there’s enough testimony to lay the foundation that these were documents prepared by [appellant’s] attorney, either retained or hired or appointed by the court to represent him in the bankruptcy proceedings and that they were on his behalf and they go to the—and they’re not collateral. They go to the issue of credibility and they go to the issue as to ability on the part of [appellant] to support the two children.”
 

 Appellant’s argument that the disclosure statement did not give a fair picture of his financial status is disingenuous, especially since it was filed with the bankruptcy court for the express purpose of revealing his financial status and his plan for reorganization.
 

 The Bankruptcy Code provides that a debtor under chapter 11 must transmit to creditors a court-approved disclosure statement along with his plan of reorganization for purposes of informing the creditor and obtaining the creditors’ approval of the plan. (11 U.S.C. § 1125(b);
 
 Matter of Texas Extrusion Corp.
 
 (5th Cir. 1988) 844 F.2d 1142, 1156.) The disclosure statement is required to contain “adequate information” which is defined as “information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor’s books and records, that would enable a hypothetical reasonable investor ... to make an informed judgment about the plan. . . .” (11 U.S.C. § 1125(a).) The determination of what is adequate information is largely within the discretion of the bankruptcy court. (844 F.2d at p. 1157.) Among the kinds of information required in a disclosure statement are: (1) an enumeration of asset and liabilities; (2) reasons for debtors’ financial difficulty; (3) cash requirements needed by the debtor; (4) the status of any pending litigation; and (5) tax consequences which may arise as a result of the debtor’s reorganization.
 
 (Hall
 
 v.
 
 Vance
 
 (10th Cir. 1989) 887 F.2d 1041, 1043.)
 

 Here, appellant’s disclosure statement, unlike his chapter 13 plan, did not make any specific reference to his support obligations. His disclosure statement indicated that he owned a horse, Eastridge Star, which was his primary
 
 *425
 
 asset, and that the horse could earn anywhere from $90,000 to $150,000 a year. It also explained that the ownership of the horse was a contested issue and that judgment debtors had executed on the horse. The disclosure statement revealed that he had $4,500 in a bank account, and that he owned an interest in a corporation that dealt in gas and oil leases. It listed undisputed liabilities in excess of $249,000 and $575,00 in disputed liabilities.
 

 Appellant was given the opportunity at trial to testify about the information contained on the disclosure statement on direct and cross-examination. He admitted that he prepared the document with his attorney, but did not review the document before filing. In fact, at several points during his testimony, he discredited the information in the disclosure statement. He repeatedly claimed he did not own Eastridge Star, but that “the court” had determined it was his and that he did not have any money in his bank account.
 

 The information on the disclosure statement was clearly relevant to a determination of appellant’s financial status and was impeachment material relied upon by the prosecutor. The admission of schedules filed with the bankruptcy court has been approved in a number of situations.
 
 (Bass
 
 v.
 
 Youngblood
 
 (1963) 221 Cal.App.2d 278, 290 [34 Cal.Rptr. 326] [admitted to impeach debtor’s testimony regarding the amount of a debt];
 
 Develop-Amatic Engineering
 
 v.
 
 Republic Mortgage Co.
 
 (1970) 12 Cal.App.3d 143, 149 [91 Cal.Rptr. 193] [admitted as evidence of intent in determining whether a transaction constituted a sale or a mortgage];
 
 Terzian
 
 v.
 
 California Cas. Indem. Exch.
 
 (1969) 3 Cal.App.3d 90, 96 [83 Cal.Rptr. 255] [court judicially notices bankruptcy schedules as evidence of liability in an insurance dispute].) In fact, in this appeal and in the superior court, appellant argued that the court should judicially notice other documents filed in the bankruptcy court. He cannot seek to have some documents admitted when they inure to his benefit and to exclude those that do not. To the extent that the material may have been prejudicial to appellant, the court addressed the issue when it weighed the prejudicial effect with the probative effect.
 
 [15]
 
 No abuse of discretion has been shown.
 

 We find no error in the admission of the disclosure statement.
 

 
 *426
 
 Disposition
 

 The judgment of the municipal court is affirmed.
 

 Woods (A. M.), P. J., and Epstein, J„ concurred.
 

 A petition for a rehearing was denied November 8, 1994, and appellant’s petition for review by the Supreme Court was denied February 16, 1995.
 

 [1]
 

 Only an individual with a regular income and unsecured debts of less than $100,000 and secured debts of less than $350,000 is eligible to file a chapter 13 petition (11 U.S.C. § 109(e)). After a chapter 13 plan is confirmed, the debtor is required to make regular payments to a trustee, who then disburses those funds to creditors in accordance with the plan, after administrative expenses have been paid. (11 U.S.C. § 1326.)
 

 [2]
 

 Appellant contends that of this amount, $300 was to satisfy current child support payments, while $291.50 was directed toward repayment of the arrearages plus administrative expenses.
 

 [3]
 

 Assuming these payments were to be attributed pursuant to appellant’s contention, these payments covered the current support payments for these months and $2,050.50 toward past due child support and administrative expenses. However, the record reflects that Susannah never received any of these payments and the entire amount apparently was applied towards administrative expenses.
 

 [4]
 

 A chapter 11 proceeding is principally designed to allow reorganization and rehabilitation of a business enterprise
 
 (Matter of Winshall Settlor’s Trust
 
 (6th Cir. 1985) 758 F.2d 1136, 1137; Cowans, Bankruptcy Law & Practice (6th ed. 1994) § 3.4, p. 228), although individuals are eligible to file petitions under this chapter as well (11 U.S.C. § 109(d);
 
 Toibb
 
 v.
 
 Radloff
 
 (1991) 501 U.S. 157, 166 [115 L.Ed.2d 145, 154-155, 111 S.Ct 2197] (dis. opn. of Stevens, J.).)
 

 [5]
 

 It does not appear that any action whatsoever was taken in bankruptcy court.
 

 [6]
 

 He apparently also gave small amounts of cash to the children, fed them when they visited him every other weekend, but did not buy them clothing or pay for medical expenses.
 

 [7]
 

 While we rely upon the exemption from automatic stay, it should be noted that there is also authority which holds that an action to collect child support due after the filing of a bankruptcy petition does not fall within the provisions of the automatic stay.
 
 (In re Heflin
 
 (Bankr. S.D.Ohio 1992) 145 B.R. 560, 563.)
 

 [8]
 

 We note that appellant failed to advise us in his brief that the Ninth Circuit had reversed the district court.
 

 [9]
 

 The court also found that although the automatic stay was inapplicable, the bankruptcy court could have stayed the administrative proceedings pursuant to 11 United States Code section 105(a). That section provides that the bankruptcy court may issue “any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.”
 

 [10]
 

 Except for nine specific debts enumerated in Bankruptcy Code section 523(a), a discharge in bankruptcy “discharges the debtor from all debts that arose before bankruptcy.”
 
 (Ohio
 
 v.
 
 Kovacs
 
 (1985) 469 U.S. 274, 277 [83 L.Ed.2d 649, 654-655, 105 S.Ct. 705]; 11 U.S.C. § 523(a).) The court in
 
 Raping
 
 erroneously concluded that the debt to the state was discharged in bankruptcy pursuant to Bankruptcy Code section 523(a)(5), which provides that a support debt assigned to another entity is dischargeable. However, that subdivision exempts assignments to governmental entities.
 
 (In re Leser
 
 (8th Cir. 1991) 939 F.2d 669, 672.)
 

 [11]
 

 Younger
 
 v.
 
 Harris, supra,
 
 401 U.S. 37.
 

 [12]
 

 Indeed, we find that under California law, a spouse or child has a number of avenues to pursue actual payment of support, none of which is being pursued here. (Fam. Code, §§ 4000 [former Civ. Code, § 4703—action by a parent to enforce support]; 4002 [former Civ. Code, § 248—action by county to enforce support and right to reimbursement]; 4503 [former Civ. Code, § 4708—action by parent to recover arrearages]; 5230 [former Civ. Code, § 4390.3—wage garnishment order to be included in support orders]; § 7641 [former Civ. Code, § 7012—contempt]; Code Civ. Proc., § 1209 [contempt].) Clearly this conviction is criminal in nature and not one to enforce a money judgment.
 

 [13]
 

 Appellant was under chapter 13 proceedings from October 1988 to December 1989 when the matter was converted to chapter 11. No payments for support were made for the months of July 1989 through December 1989, a portion of the time period alleged in the criminal complaint.
 

 [14]
 

 As indicated at page 421,
 
 ante,
 
 Penal Code section 270 provides a presumption which places the burden of proof on the defendant to establish reasonable doubt of a lawful excuse.
 

 [15]
 

 In that regard, appellant argues that the jury may have speculated he could sell the horse to raise money, not an option he claims was available to him. This argument falls within one of the items to be weighed under Evidence Code section 352. Appellant had the chance to attempt to convince the jury by testimony and argument that the horse was not available for sale. In fact, the jury may have believed this. There is sufficient evidence in the record to support appellant’s ability to pay absent the sale of the horse.