**UNITED STATES of America**

v.

**Larry D. COLLINS, Defendant.**

No. 95–M–1136.

United States District Court,
W.D. New York.

April 16, 1996.

Patrick H. NeMoyer, United States Attorney, Buffalo, New York, for the Government; Trini E. Ross, Assistant United States Attorney, of counsel.

Birzon & Zakia, P.C., Buffalo, New York, for Defendant; Paul I. Birzon, of counsel.

## DECISION and ORDER

FOSCHIO, United States Magistrate Judge.

### JURISDICTION

On October 26, 1995, pursuant to 18 U.S.C. § 3401(b), Fed.R.Cr.P. 58(b)(3)(A), Defendant executed a consent to proceed before a magistrate judge in a misdemeanor case.

### BACKGROUND and FACTS [1]

Defendant Collins was charged by information filed October 13, 1995 with a single violation of 18 U.S.C. § 228, the Child Support Recovery Act of 1992. Specifically, the Information alleges that Collins, who was then and remains a resident of California, was ordered, on September 14, 1993, as modified November 3, 1993 by a California state court, to pay child support to Collins' infant

---

1. The facts are taken from the allegations contained in the Information and the papers filed by the parties in connection with Defendant's motion to dismiss.

child who has resided in Buffalo since April, 1991, and that Collins has, beginning in May, 1993 failed to pay such support. The Information alleges further that in November, 1993, New York state sought to enforce Collins' support obligation by filing a petition pursuant to the Uniform Reciprocal Enforcement Support Act in the Superior Court of California. According to the Information, as of May 31, 1994, Collins' arrearage in his support obligation was $24,000. However, Defendant states, on information and belief, that his daughter moved to the Buffalo, New York area following entry of the divorce decree. On April 18, 1995, Collins petitioned the California Superior Court to modify the support order entered September 14, 1993 as modified on November 3, 1993. Collins was arraigned in this court on October 26, 1995 and pleaded not guilty.

By papers filed December 4, 1995, Collins moved to dismiss the Information on grounds that (1) it failed to allege facts which if proven would constitute the offense, (2) the court should decline jurisdiction under the abstention doctrine, and (3) 18 U.S.C. § 228 as applied is unconstitutional. The Government's response was filed December 20, 1995. Oral argument was held January 23, 1996.

For the reasons which follow, the motion is DENIED.

### DISCUSSION

1. *Sufficiency of the Information*

The Child Support and Recovery Act of 1992, ("the Act") provides that

whoever willfully fails to pay a past due support obligation with respect to a child who resides in another State shall be punished as provided in subsection (b).

18 U.S.C. § 228(a).

Subsection (b) of the Act punishes a first offense by fine or imprisonment up to six months, or both; for subsequent offenses, a fine or imprisonment of not more than two years. 18 U.S.C. § 228(b)(1), (2).[2] Subsection (d) of the Act defines the phrase "past due support obligation" as "any amount determined under a court order or an order of an administrative process pursuant to the law of a State to be due from a person for the support and maintenance of a child ... and which has remained unpaid for a period longer than one year, or is greater than $5,000." 18 U.S.C. § 228(d)(1)(A), (B).

An information is required only to be "a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed.R.Crim.P. 7(c)(1). The information "need not contain ... a formal conclusion or any other matter not necessary to such statement." *Id.* To satisfy the requirements of the Fifth Amendment due process clause, the accusatory instrument "must set forth the offense with clearness and all necessary certainty, to apprise the accused of the crime with which he stands charged" *United States v. Cruikshank,* 92 U.S. 542, 556, 23 L.Ed. 588 (1875) (internal citations omitted). The information must also "furnish the accused with such a description of the charge ... for protection against further prosecution for the same cause." It is sufficient to charge the offense in the generic language of the statute if such language "fully, directly, and expressly, without uncertainty or ambiguity, set(s) forth all of the elements necessary to constitute the offense...." *Russell v. United States,* 369 U.S. 749, 765, 82 S.Ct. 1038, 1047, 8 L.Ed.2d 240 (1962) quoting *United States v. Carll,* 105 U.S. 611, 612, 26 L.Ed. 1135. *See also Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974) ("A[n] indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecution for the same offense."); *United States v. Covino,* 837 F.2d 65, 69 (2d. Cir.1988) (charging instrument "need only track the language of the statute

---

**2.** 18 U.S.C. § 3571(b)(6) provides in the case of a Class B misdemeanor, where the maximum sentence is not more than six months, for a maximum fine of $5,000; 18 U.S.C. § 3571(b)(5) provides in the case of a Class A misdemeanor, where the maximum sentence is six months or more (18 U.S.C. § 3559(a)(6)), for a maximum fine of $100,000; for any felony, the fine is $250,000. 18 U.S.C. § 3571(b)(3).

and, if necessary to apprise the defendant 'of the nature and accusation against him,' [and] . . . state time and place in approximate terms.") quoting *United States v. Bagaric*, 706 F.2d 42, 61 (2d Cir.), *cert. denied*, 464 U.S. 840, 104 S.Ct. 133, 134, 78 L.Ed.2d 128 (1983).

■ Here, the Information alleges that (1) Collins, by order of a California court, was required to pay in child support $3,750 per month from May 1, 1993 to August 1, 1993, and $3,000 per month beginning September 1, 1993, (2) Collins willfully failed to pay such court ordered child support during the period between October 1, 1993 and May 31, 1994, (3) Collins has failed to pay such child support in an amount greater than $5,000, and (4) the child for whose support the amounts are owed has been residing in New York state since April, 1991. Thus, the Information alleges that Collins has willfully failed to pay a support obligation imposed by a court, which is past due, for a child living in a state other than that of the Defendant's residence, in an amount greater than $5,000, tracks the statutory definition of the offense. The Information therefore informs Collins of the nature and origin of the unpaid support obligation, the location of the child for whose benefit the obligation allegedly exists, the amount of the obligation, and the basis upon which the element of willfulness is founded. Accordingly, the Information complies with Rule 7(f) and the Fifth Amendment as it apprises Collins "with reasonable certainty of the nature of the accusation against him." *Russell, supra* at 765, 82 S.Ct. at 1047, quoting *United States v. Simmons*, 96 U.S. 360, 362, 24 L.Ed. 819.

Collins, however, contends that as "there has never been a determination by a California court or administrative body . . . [finding that child support payment] in any amount is past due," the absence of such an allegation fails to meet the statutory definition that "a past due support obligation," "determined

under a court order . . ." exists, as required by 18 U.S.C. § 228(d)(1)(A), and the Information therefore fails to plead as essential fact. Defendant's Memorandum of Law in Support, filed December 4, 1995 ("Defendant's Memorandum") at 4. However, Collins' argument requires reading the statutory phrase "determined under" to mean "determined by" a court order or administrative process. Collins argues that as no California court or administrative agency has made any such determination, the required determination has not been alleged, and cannot be proven as a fact. But Collins' interpretation of the statutory language is not what Congress legislated. *McCarthy v. Bronson*, 500 U.S. 136, 139, 111 S.Ct. 1737, 1740, 114 L.Ed.2d 194 (1991) ("In ascertaining the plain meaning of [a] statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole."); *Garcia v. United States*, 469 U.S. 70, 75, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984) (Rehnquist, J.) ("[O]nly the most extraordinary showing of contrary intentions from [the legislative history] would justify a limitation on the 'plain meaning' of the statutory language."). Had Congress wished to condition liability upon a specific finding by a court or agency of a defendant's past due child support obligation as to its actual amount and existence, it could easily have so stated. Rather, Congress required only that the government allege and prove at trial the existence of a valid court order or state administrative agency ruling creating the obligation, and the fact of non-payment as required by the order or ruling as to a child living in another state. It is the trier of fact which must make the required determination whether, based upon the proven court order or agency ruling creating the support obligation, the past due support obligation is within the provision of the Act, *i.e.* any amount unpaid for more than one year, or $5,000.[3] Collins' interpretation, if accepted,

---

3. If, in a case involving an administrative child support ruling, a defendant were to move to suppress evidence of the existence of administrative support ruling on the ground that it obtained in violation of his right to due process, the court may be obliged to conduct a hearing to determine this issue. *See United States v. Mendoza-*

*Lopez*, 481 U.S. 828, 838, 107 S.Ct. 2148, 2155, 95 L.Ed.2d 772 (1987). Whether such a requirement is applicable to a state court child support order need not be addressed at this point in the proceedings. *See Mendoza–Lopez, supra,* at 841, 107 S.Ct. at 2157 (unavailability of judicial re-

would create an additional obstacle to compliance, contrary to the manifest purposes of the Act. Collins' challenge to the sufficiency of the Information therefore fails.

## 2. *Abstention and Comity*

 Collins contends that as the prosecution is based upon an alleged unpaid arrearage on a state court order of child support, which is the subject of a pending modification motion in the California Superior Court, the court should decline exercise of jurisdiction on abstention grounds, relying upon *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) and *Ankenbrandt v. Richards,* 504 U.S. 689, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992). Defendant's Memorandum at 6. As first enunciated in *Railroad Commission v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), the abstention doctrine contemplates that "federal courts 'exercising a wise discretion,' restrain their authority because of 'scrupulous regard for the rightful independence of the state governments' and for the smooth working of the federal judiciary." *Pullman Co., supra,* at 501, 61 S.Ct. at 645. The doctrine applies where questions of constitutional law may be avoided by awaiting a decision by a state court on a matter of state law, *Pullman, supra;* where there is need to avoid interference with questions of administration of important matters of internal state policy, *New Orleans Public Service, Inc. v. Council of City of New Orleans,* 491 U.S. 350, 361, 109 S.Ct. 2506, 2514, 105 L.Ed.2d 298 (1989); *Burford, supra,* at 331–32, 63 S.Ct. at 1106–07; where there are unsettled questions of state law bearing upon resolution of a substantial federal claim, *Clay v. Sun Insurance Office Ltd.,* 363 U.S. 207, 80 S.Ct. 1222, 4 L.Ed.2d 1170 (1960); and where there exists, in exceptional circumstances, a pending state court proceeding in which all of the issues in controversy between the same parties can be resolved, *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). *See generally,* Charles Alan Wright, Law of Federal Courts, 1994

§ 52. However, these exceptions must be weighed against "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them," *Colorado River, supra,* at 817, 96 S.Ct. at 1246, and the Supreme Court's observation that "the presence of federal-law issues must always be a major consideration weighing against surrender [of federal jurisdiction]." *Id.* at 26.

Collins further contends that abstention should apply in this case as one of the elements of the offense depends upon aspects of "the domestic relationship even where the parties do not seek divorce, alimony or child custody." *Ankenbrandt v. Richards,* 504 U.S. at 705, 112 S.Ct. at 2216. "This would be so when a case presents 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar.' " *Ankenbrandt, supra,* at 705–706, 112 S.Ct. at 2216 (*quoting Colorado River, supra,* at 814, 96 S.Ct. at 1244.) In *Ankenbrandt,* the Court held a tort action between former spouses emanating from acts of alleged prior child abuse did not depend upon a further determination of the parties' status and thus was cognizable under federal diversity jurisdiction. *See also Minot v. Eckardt–Minot,* 13 F.3d 590, 594–95 (2d. Cir.1994) (abstention appropriate in diversity action for tortious interference with custodial rights where prior order of custody under further review by state court).

Collins therefore argues that as the California child support decree, which creates the unpaid support obligations, the predicate for the Information, is subject to a pending modification request in the California state court, this court should delay trial in this case until the modification issue is resolved. Defendant's Memorandum at 8. Additionally, Collins maintains that any determination as required by Section 228(d)(1)(B), that Collins' arrearage has existed for more than one year, necessarily will involve the federal trial in a question of California law as, according to Collins, whether there is in fact such an arrearage can be determined only with reference to California law, the law upon which the support order and resulting obligation is

view creates need for opportunity to collaterally attack prior administrative proceeding).

based. *Id.* However, Collins does not explain how, under California law, the requested modification if granted would affect Collins' support obligation to such an extent as to be no longer existent, or fall below the thresholds established for liability under Section 228.[4] The logical extension of Collins' argument is that any defendant in a case under Section 228, could frustrate federal prosecution by filing modification motions in state court. As an alternative, Collins suggests, but does not formally request, that the criminal prosecution be stayed abiding the outcome of his pending modification request. Defendant's Memorandum at 8.[5] Moreover, as the Information alleges an unpaid obligation in excess of $5,000, the existence of an arrearage for more than one year is irrelevant.

Under diversity jurisdiction, federal courts will not entertain civil actions to enforce state court child support orders where such orders are subject to modification. *Olsen v. Olsen*, 580 F.Supp. 1569, 1571–72 (N.D.Ind.1984) (action to enforce state court ordered child support remanded). However, whether in a federal civil case, a federal court may, under diversity jurisdiction, decline exercise of jurisdiction over a child support order enforcement action based either upon the so-called domestic-relations exception to diversity jurisdiction or upon the abstention doctrine, *see Ankenbrandt v. Richards, supra,* at 699–700, 112 S.Ct. at 2212–2213, (noting possibility of *Burford* type abstention in case where federal action preceded state action and federal action depended upon determination of status of parties, an issue to be determined in the state proceed-

ing), the court finds that neither principle is applicable to a federal criminal prosecution.

Abstention "is clearly improper when a federal suit alleges claims within the exclusive jurisdiction of the federal courts." *Andrea Theatres, Inc. v. Theatre Confections, Inc.,* 787 F.2d 59, 62 (2d Cir.1986) (citing cases) (Clayton Act claim precluded dismissal based on abstention doctrine); *Medema v. Medema Builders, Inc.,* 854 F.2d 210, 214 (7th Cir.1988) (claim under Securities Exchange Act of 1934 rendered improper dismissal based on abstention). *See Key v. Wise,* 629 F.2d 1049, 1059 (5th Cir.1980) (abstention based dismissal improper in light of district court's exclusive jurisdiction provided under 28 U.S.C. § 2409a providing for actions to quiet title involving interests of United States). Pursuant to 18 U.S.C. § 3231, United States district courts have "original" and "exclusive" jurisdiction of "all offenses against the laws of the United States."

In *United States v. Hampshire,* 892 F.Supp. 1327, 1330 (D.Kan.1995) the court held that the domestic relations exception was not applicable to a prosecution under 18 U.S.C. § 922. Although, in *Hampshire, supra,* the court, in upholding the constitutionality of the Act, considered the abstention doctrine under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) as an alternative defense argument, it found that particular form of the abstention doctrine was inapplicable as there were no pending state proceedings. In *Hampshire,* however, the court also found the abstention doctrine inapplicable in the absence of a showing of any interference by a prosecution under the Act with any state court proceedings. *See also United States v. Hopper,* 899 F.Supp.

---

**4.** Under California law, modifications of child support orders may be retroactive only to the date of the motion to modify; otherwise the modification is prospective. Cal.Fam.Code, §§ 3653, 4009 (West 1994). *See also Armstrong v. Armstrong,* 15 Cal.3d 942, 126 Cal.Rptr. 805, 544 P.2d 941 (1976).

**5.** The court notes that under California Penal Law § 270 (West 1995), which makes wilful failure to support a child a misdemeanor, the automatic stay based upon a filing in bankruptcy does not bar prosecution. *People v. Gruntz,* 29 Cal.App.4th 412, 35 Cal.Rptr.2d 55 (2d Dist. 1994), review den., (1995). Further, California

Penal Law § 270(b) (West 1995) provides that before or after plea or trial if the defendant provides sufficient undertakings that the defendant will meet his obligations of child support, the court may suspend the criminal proceedings or sentence. There is no indication in the caselaw under Section 270 that the California courts would stay a criminal prosecution based on a defendant's pending motion to modify the support order which was the subject of the state prosecution. Prosecutions under § 270 may also be based upon a court order of support. *People v. Temple,* 20 Cal.App.3d 540, 97 Cal.Rptr. 794 (2d Dist.1971).

389, 393 (S.D.Ind.1995) (abstention inapplicable because there are no pending state criminal proceedings to which court could defer). It therefore did not reach the question whether the abstention doctrine may apply to a federal prosecution. Here, Collins relies on the fact that his motion to modify the child support order is pending in state court. There is, however, no basis to find any potential interference with the California proceeding. Further, abstention is inappropriate where, as here, the district court has been given exclusive jurisdiction over the federal proceeding. Therefore, the abstention doctrine is inapplicable to this criminal prosecution.

■■■ Under the principle of comity, a court should defer to the court which first takes jurisdiction of the defendant, which must be allowed to "exhaust its remedy" before another jurisdiction will be permitted to proceed against the defendant. *Ponzi v. Fessenden,* 258 U.S. 254, 260, 42 S.Ct. 309, 310, 66 L.Ed. 607 (1922). As the instant federal prosecution has commenced and there is no criminal proceeding in California against Collins involving the child support arrearage in this case (or any other criminal matter), no issue involving a question of comity is presented. *See Hopper, supra,* at 393–94.

Collins relies on *United States v. Schroeder,* 894 F.Supp. 360 (D.Ariz.1995), to support his contention that enforcement of the Act in this case "would force a federal court to intervene in matters still pending in state court," in violation of applicable principles of comity and speedy trial requirements. Defendant's Memorandum at 8. As, under California law, any modification of the support order in this case would only have prospective effect, the modification if granted will not affect Collins' arrearage alleged in the Information. *See* footnote no. 4, *supra,* at p. 1033. However, even if it were to become necessary for the court to interpret the relevant support order under California law in connection with the trial of the Information, such interpretation would not interfere with the California court's consideration of Collins' pending motion to modify, nor, contrary to Collins' contention, would there be any re-

quirement that Collins collaterally attack the order in state court. Defendant's Memorandum at 8. The statement in *Schroeder, supra,* "that principles of federalism and comity" render the statute unconstitutional, *Schroeder,* at 368, upon which Collins also relies, is not supported by authority, and Collins points to no authority for his assertion that comity is a federal constitutional requirement. Rather, as between the federal government and the states, comity is a rule of law, based on considerations of practicality and inter-governmental respect bearing · on administration of a federal· court's criminal jurisdiction over a defendant, *see Ponzi, supra,* not a constitutional mandate to defer to any state court proceeding—civil or criminal—involving the same person, as a bar a federal criminal prosecution. The fact that California has a criminal statute addressing the failure to pay court ordered child support does not create a need to further consider the comity issue as no prior criminal proceeding is pending against Collins in California.

### 3. *Constitutionality of the Act as Applied*

■■■ Collins' also asserts is that Section 228 is unconstitutional as applied. Defendant's Memorandum at 10. Specifically, Collins argues that under the criteria established by *United States v. Lopez,* —— U.S. ——, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), for testing the reach, under the Commerce Clause, of congressional legislative power, as Collins did not engage in any interstate activities in connection with the allegations of the Information, the Act cannot, consistent with the requirements of *Lopez,* be applied to him. *Id.* at 13. Collins' argument is based upon the premise that, under *Lopez,* unless, in connection with the alleged non-payment of child support, Collins utilized channels or instrumentalities of interstate commerce, or engaged in activities which substantially affect interstate commerce, *Lopez, supra,* at —— – ——, 115 S.Ct. at 1629–30, enforcement of the Act in this case would place it beyond the reach of congressional power to regulate interstate commerce. Collins' argument proceeds on the ground that his alleged failure to pay was limited to his inaction within California and the undisputed fact

that his child, as to whom Collins' failure to abide by the support order relates, was removed to New York by Collins' former wife.[6] Thus, Collins maintains the alleged violation pertains to a solely intrastate matter.

In *Lopez*, the Supreme Court invalidated the Gun–Free School Zones Act of 1990, 18 U.S.C. § 922(q)(1)(A), as that statute neither regulated a commercial activity nor required the possession of the prohibited fire-arm to be connected to interstate commerce. The Court stated that under the Commerce Clause, U.S. Const. Art. I, § 8, cl. 3, Congress may "regulate the use of the channels of interstate commerce," "regulate and protect the instrumentalities of interstate commerce," and "regulate those activities having a substantial relation to interstate commerce." *Lopez* at ———–———, 115 S.Ct. at 1629–30.

In striking down Section 922(q), the Court found the statute "ha[d] nothing to do with 'commerce' or any sort of economic enterprise," nor was the legislation an "essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated." *Lopez, supra* at ———, 115 S.Ct. at 1625. Further, the Court found the legislation "contained no jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce." *Lopez, supra* at ———, 115 S.Ct. at 1625.

Collins' argument in the instant case, that the Act is unconstitutional as applied to him, is premised on the fact that it was not Collins, as the person required to pay the unpaid support obligation, but his daughter, the person for whose benefit the obligation exists, who moved from California, thus creating an interstate nexus between the support obligation and Collins. Defendant's Memorandum at 12–13. Collins further asserts, therefore, that he neither has utilized the channels or interstate commerce nor engaged in "any activity which substantially affects interstate

commerce." Defendant's Memorandum at 13. To support this contention, Collins relies upon legislative history which, in Collins' view, establishes that the Act was aimed solely at parents who resort to interstate movements for the purpose of avoiding payment of child support obligations. Defendant's Memorandum at 15–16. However, although such conduct was clearly of major concern to Congress, it was not the exclusive motive for the Act, as an examination of the House Judiciary Committee Report on the bill, H.R. 1241, which became the Act, reveals. *See* H.R.Rep. No. 771, 102d Cong., 2d Sess. at 6 (1992).

To meet the threshold of an interstate nexus, Section 228 requires only that the relevant support obligation be one "with respect to a child who resides in another state." 18 U.S.C. § 228(a). Thus, for purposes of determining whether the legislation requires an interstate nexus with the unpaid obligation sought to be enforced, it is irrelevant whether it is the movement across state lines or residence of the parent, who has the obligation to pay support, or the child, which is to be the beneficiary of the support payment, which causes the performance of the obligation to acquire an interstate character. *See United States v. Kegel*, 916 F.Supp. 1233, 1236 (M.D.Fla.1996) ("innocent" relocation to a different jurisdiction is no less an injurious use of the channels of interstate commerce than intentional flight to avoid payment of child support where accompanied by nonpayment of support obligations).

In *Dahnke–Walker Milling Co. v. Bondurant*, 257 U.S. 282, 42 S.Ct. 106, 66 L.Ed. 239 (1921), the Supreme Court found a contract made and to be performed in one state with the expectation that the commodities were ultimately destined for use in another state placed the entire transaction in interstate commerce. *Dahnke–Walker Milling Co., supra*, at 292, 42 S.Ct. at 109. Here, the support obligation was initially established

---

6. The divorce decree incorporated a prior support agreement of the parties. *See* Government's Memorandum of Law in Opposition to Defendant's Motion to Dismiss, filed December 20, 1995, Exhibit 3. The Information alleges Collins daughter resided in this district since April,

1991, Information ¶ 2. Collins states that the child moved to Buffalo after the divorce in September, 1993. Defendant's Memorandum at 1. The inconsistency is not relevant to the issues presented.

by the agreement of the parties, and incorporated into Collins' 1993 divorce decree. In the case of a child support order, whether or not incident to a divorce decree, absent any requirement that the child not be removed from the support paying parent's state of residence, there is no reason for the parent with the support obligation to expect the obligation and payment will remain a wholly intrastate matter. Given the high degree of mobility which characterizes modern American society and the fact that the custodial parent may need, for reasons of economic opportunity, health or general personal well-being, to relocate to another state, it is reasonably foreseeable that the support obligation may become an interstate matter. Significantly, the agreement between Collins and his former wife specifically addressed Collins' future visitation rights in Buffalo, New York. *See* Exhibit 3 to Government's Memorandum of Law at 4, ¶ 8(a). As it appears that Collins' former wife and his child were already residing in Western New York or left California for New York shortly after entry of the divorce and support order, there is sufficient ground to find that Collins expected his obligation to his daughter would soon become, or already was, interstate in nature, and that his support obligation, as performance of the contract in *Dahnke-Walker*, should therefore be considered in interstate commerce. There is no suggestion that Collins' wife violated the terms of the California order so as to upset any expectation that Collins' support obligation would remain exclusively a matter of intrastate concern.

▬ Further, even if an activity may, standing alone, be considered non-commercial it may nevertheless be considered as economic in nature and, if in the aggregate, it substantially affects interstate commerce, it is subject to federal regulation. *United States v. Sage*, 906 F.Supp. 84, 89 (D.Conn. 1995) *citing Wickard v. Filburn*, 317 U.S. 111, 125, 63 S.Ct. 82, 89, 87 L.Ed. 122 (1942) ("[e]ven if an activity [is] local and though it may not be regarded as commerce, it may still, whatever its nature, be reached by Congress if it exerts a substantial economic effect on interstate commerce...."). Moreover, intangibles, including contract and debt

obligations, are properly subject to federal regulations under the Commerce Clause. *See Hopper, supra,* at 391 (citing cases).

▬ Congress has found that the unpaid child support obligations related to interstate cases, is a multi-billion dollar annual national problem. H.R.Rep. No. 771, *supra* at 5; *Sage, supra,* at 89. Such significant non-payment of child support necessarily impacts the flow of goods and services in a national economy. *Sage, supra,* at 90. Thus, because the aggregate of unpaid child support substantially affects interstate commerce any individual unpaid support obligation within the scope of the Act is an economic matter of interstate concern subject to regulation under the Commerce Clause. *Wickard v. Filburn, supra.*

Moreover, in adopting the legislation, Congress could have equally considered the concomitant burden payment and non-payment of child support obligations places on interstate facilities, including the use of the mails, private interstate carriers, telephone and other forms of interstate communications, and related channels of transportation, which necessarily are employed in connection with attempts to enforce and collect child support through legal proceedings and self-help, in addition to the use of such facilities in the course of maintaining voluntary compliance. *United States v. Kegel, supra,* at 1238. It is also indisputable that significant expenditures, in the form of legal fees and related costs, are frequently incurred incident to such activity. These facts further support a finding that the subject matter of the Act is both commercial and interstate in character, and that the required use of interstate channels and instrumentalities related to the payment and enforcement of child support obligations demonstrates ample justification for federal regulation. Fears that such legislation may lead to an undesirable expansion of federal authority relating to enforcement of obligations or family matters, historically subjects of state concern, *see Schroeder, supra,* at 366, must be left to the sound judgment of Congress. There is a rational, non-tenuous relationship between interstate non-payment of child support and interstate com-

merce, *Lopez, supra,* at ——, 115 S.Ct. at 1630, *Sage, supra,* at 89, and the effects of child support non-payment upon interstate commerce are neither "indirect" nor "remote." *Lopez, supra,* at —— –——, 115 S.Ct. at 1628–29. The Act therefore satisfies the requirements of *Lopez,* and is constitutional as applied to Collins. *See Hopper, supra,* at 393.

### CONCLUSION

Based upon the foregoing, Collins' motion to dismiss the Information is DENIED. The parties are directed to appear on **April 25, 1996 at 2:00 p.m.** for the purpose of scheduling further proceedings.

SO ORDERED.